760 P.2d 782

**Sylvia Johnson JIM, Personal Representative of the Estate of William Jim, Deceased, Plaintiff–Appellant,**

v.

**Roy BUDD, Defendant–Appellee.**

No. 8874.

Court of Appeals of New Mexico.

June 9, 1987.

■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■

---

Jerrald J. Roehl, Robert G. Sloan, Roehl & Henkel, P.C., Albuquerque, for plaintiff-appellant.

Richard L. Gerding, Michael T. O'Loughlin, Tansey, Rosenbrough, Roberts & Gerding, P.C., Farmington, for defendant-appellee.

## OPINION

ALARID, Judge.

In this wrongful death action, plaintiff appeals a judgment entered on a (special interrogatory) jury verdict in favor of defendant. Plaintiff also appeals the trial court's denial of her motion for new trial. Plaintiff claims five issues of reversible error by the trial court: (1) decedent's alleged statements to defendant were inadmissible under the hearsay rules; (2) plaintiff was prejudiced by not being permitted to lead defendant on direct examination; (3) defendant's counsel made prejudicial inquiries into plaintiff's collateral sources of income; (4) the trial judge was unable to exercise proper judicial discretion at trial due to personal distractions; and (5) cumulative trial error occurred, thereby prejudicing plaintiff's case.

Plaintiff's motion for new trial was grounded upon the same issues that plaintiff raises on appeal. Because we affirm as to each issue, we need not discuss the denial of a new trial.

## FACTS

Defendant Budd, an independent trucker, went to Aztec Design Company (Aztec) in Farmington to have angle iron removed from the gates of his belly-dump tractor trailer. Simplistically, a belly-dump trailer is one which loads from the top and has gates on the bottom which open toward each other at an angle to allow material (usually dirt, rock or aggregate) to flow through the bottom and onto a road surface in a windrow-type pattern. Defendant's trailer was approximately 7–8 feet high and about 50 feet long. Each gate weighed between 700 and 800 pounds.

The gates on the trailer were operated by a switch in the tractor which injected air pressure into a cylinder in the trailer. The switch had three positions: open, closed and off. The system was designed to store the air so that if the tractor ignition were turned off, the air pressure would remain in the cylinder. A "bleed-off" valve on the air tank could be used to bleed the stored air from the cylinder in less than five minutes. That was not done in this case.

Plaintiff's-decedent, William Jim, was shop foreman at Aztec at the time of his death. Defendant had driven his truck to Aztec during the lunch hour when defendant and Mr. Jim were the only persons in the area. Defendant testified that, at Mr. Jim's request, he parked his truck in front of the shop while Mr. Jim gathered the tools he would need. Together they chained the gates open, hooking the chain to a bracket on the side of the tractor.

Defendant testified that Mr. Jim asked him to " '[l]et the gates down against the chain' " in order to take any slack out of the chain. Defendant went to the cab of the truck and positioned the switch in the closed position. He returned to Mr. Jim and asked him if that was satisfactory, and Mr. Jim allegedly said "yes."

Mr. Jim crawled underneath the trailer and began working on the angle iron from a kneeling position. While he worked, Aztec's owner, Ulysses Bartmess, returned from lunch and conversed with defendant who stood by the side of the trailer. Bartmess testified that he had observed the manner in which the gates were chained to the bracket, and it looked to him as if the procedure had been done safely. Bartmess and defendant did not discuss that the tractor was left running and the air pressure continued to operate against the gates; neither did they discuss that the gate switch was in the closed position. Expert testimony revealed that because of a hairline crack in the bracket, the chain gave way and both gates closed on Mr. Jim at a force of approximately 49,760 pounds psi.

Defendant ran to the tractor and opened the switch to release Mr. Jim from the gates of the trailer. Mr. Jim died from his injuries shortly thereafter without recounting any of the events to anyone.

DISCUSSION

### a. Hearsay Issue

Plaintiff tried vigorously before and during trial to exclude communications allegedly made by Mr. Jim to defendant just prior to the accident. She argues that the communications were hearsay and did not fall within any of the exceptions of NMSA 1978, Evid.R. 803 or 804 (Repl.Pamp.1983). She claims that even if the hearsay rule did not apply, or if the communications fell within Rules 803(24) or 804(b)(6), the trial court committed reversible error by not excluding them under considerations of NMSA 1978, Evid.R. 403 (Repl.Pamp.1983). Finally, plaintiff argues that, at the very least, she should have been granted a limiting instruction both at the time the statements were admitted into evidence and at the conclusion of trial with the other jury instructions. The trial court stood firm in its belief that the communications were not hearsay. We agree.

■ Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." NMSA 1978, Evid.R. 801(c) (Repl.Pamp.1983). "Statement" is defined as "(1) an oral or written assertion or (2) nonverbal conduct of a person, *if it is intended by him as an assertion.*" Evid. R. 801(a) (emphasis added). By definition, then, statements or conduct which are nonassertive are not hearsay.

■ But what of utterances from which assertions may be implied from the words and conduct of the declarant? As applied to this case, the directions given by Mr. Jim to defendant to " '[L]et the gates down against the chain' ", and decedent's positive response when asked by defendant if what he had done was satisfactory, were not offered for the truth of the words uttered, as they have no particular relevance. Rather, they were offered to show Mr. Jim in control of the procedure and that he

knew what he was doing. While earlier cases held similar utterances inadmissible, the modern trend is to admit them. *See generally* 4 *Weinstein's Evidence,* ¶ 801(a)[01], [02], at 801–53 to –66; E. Cleary, *McCormick on Evidence,* § 250 (3rd ed. 1984). *Compare Wright v. Tatham,* 5 Cl. & Fin. 670, 7 Eng.Rep. 559 (H.L.1838) (letters offered only to prove the competence of the testator, that is, the truth of the implied statements within the letters, were mere statements or opinions of the writers and were not admissible under the hearsay rule); *Diaz v. Southeastern Drilling Corp. of Argentina,* 449 F.2d 258 (5th Cir.1971) (inquiry by unavailable declarant whether someone had left money for him held inadmissible as evidence when the only possible purpose for the testimony was to plant suspicion that a bribe had occurred); *with United States v. Zenni,* 492 F.Supp. 464 (E.D.Ky.1980) (statements by unknown callers who gave directions for placing bets to authorities who were searching defendant's premises were admissible to support the inference that bets could be placed at the telephone being called); *State v. Izzo,* 94 Ariz. 226, 383 P.2d 116 (1963) (en banc) (evidence properly admitted that wife did not return home the night before her murder to prove her fear of the accused husband).

■ Under Fed.R.Evid.Rule 801, after which the New Mexico rule is patterned, implied assertions are not hearsay. *United States v. Zenni; Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,* 505 F.Supp. 1190 (E.D.Pa.1980). We agree with the modern trend of decisions which reject the notion that implied assertions fall under the ambit of the hearsay rule. *See* McCormick on Evidence, *supra.*

We find that Mr. Jim's utterances were not offered to prove the truth of his words, or his state of mind or feelings. The words, "let the gates down against the chain," is a direction and not an assertion that would either be true or false. They were explanatory words which accompanied the events as they transpired, and they were significant to show Mr. Jim's

control of the belly-dump for purposes of repair. *See State v. Ballinger*, 99 N.M. 707, 663 P.2d 366 (Ct.App.1983), *rev'd on other grounds*, 100 N.M. 583, 673 P.2d 1316 (1984) (evidence offered under verbal acts doctrine to show that certain acts were done or to show defendant's then-existing mental state or as statements of recent perception, were not offered for the truth of the matters asserted); *State v. Aragon*, 85 N.M. 401, 512 P.2d 974 (Ct.App.1973) (out of court statement was not hearsay when merely admitted to prove that it was made and not to prove it was true).

■ We also disagree with plaintiff that defendant's testimony regarding Mr. Jim's statements was untrustworthy because Mr. Jim was unavailable and defendant was an interested party. The fact of whether the statements were made went to the weight and credibility of the witness rather than whether or not the utterances were true. *Cf. Silva v. City of Albuquerque*, 94 N.M. 332, 610 P.2d 219 (Ct.App.1980); *Strickland v. Roosevelt County Rural Elec. Coop.*, 94 N.M. 459, 612 P.2d 689 (Ct.App. 1980).

■ Plaintiff claims that even if the statements were not hearsay, or if they fell within the residual exceptions to Rules 803 and 804, they should nevertheless have been excluded under Rule 403 because the prejudice to plaintiff outweighed their probative value. It was within the trial court's discretion to weigh the prejudice against the probative value. *See In re Will of Ferrill*, 97 N.M. 383, 640 P.2d 489 (Ct.App.1981). Moreover, it was not a sufficient reason to exclude competent evidence merely because its admission may tend to prejudice its opponent. *State v. Martinez*, 94 N.M. 50, 607 P.2d 137 (Ct. App.1980). The evidence here was admitted to show the circumstances surrounding the statements. Since there is no indication that the circumstances could be shown by other means, the probative value was heightened. *Cf. id.*

Plaintiff's final argument under the hearsay issue is that a limiting instruction should have been given both at the time the statements were given and during final jury instructions. Plaintiff's suggestion that she relied on the trial court's letter that a limiting instruction *might* be given is without merit.

■ First, the trial court ruled that the evidence was not hearsay. We can reasonably assume that based on that ruling, a limiting instruction was unnecessary. Second, plaintiff's special requested instructions regarding credibility, bias or interest of the witness were adequately covered in content by NMSA 1978, UJI Civ. 20.3 (Repl. Pamp.1980) tendered to the jury at the end of trial. *See Landers v. Atchison, T. & S.F. Ry.*, 73 N.M. 131, 386 P.2d 46 (1963). We fail to see how plaintiff was prejudiced by the trial court's refusal to give a limiting instruction.

b. *Plaintiff's Direct Examination of Defendant*

■ Although a party has a right to use leading questions when interrogating an adverse witness, *see* NMSA 1978, Evid.R. 611(c) (Repl.Pamp.1983), that rule is subject to the trial court's right to exercise control as provided under Evid.Rule 611(c). *See State v. McCarter*, 93 N.M. 708, 604 P.2d 1242 (1980). The exercise of that control is wholly within the trial court's discretion. *Jojola v. Baldridge Lumber Co.*, 96 N.M. 761, 635 P.2d 316 (Ct.App.1981). We find no abuse in this case. We find several instances where plaintiff's counsel did lead defendant on cross-examination. The fact that counsel was not permitted to do it in all instances does not establish abuse. Moreover, plaintiff has not shown how she was prejudiced, as she claims, by the trial court's refusal. *See Regenold v. Rutherford*, 101 N.M. 165, 679 P.2d 833 (Ct.App.1984). The trial court did not err in restricting plaintiff's use of leading questions on direct examination.

c. *Inquiries Into Collateral Sources of Income*

■ Plaintiff claims that defendant's inquiries into plaintiff's income, her homesite, her vehicles, and free health care were inappropriate and tainted the jury's percep-

tion of her financial well-being. When we consider the questions and whether or not they were answered or objected to by plaintiff, we are unable to agree with her contention.

The issue of liability was separate from the issue of damages, and plaintiff presented evidence of both. Plaintiff's economist expert witness testified as to plaintiff's damages; that is, the loss of earnings caused plaintiff and her children due to Mr. Jim's death. We agree with the trial court that the issue of damages was never reached due to the jury's verdict of defendant's lack of negligence.

Plaintiff claims that defendant's inquiries "so inflame[d] [the] jury's prejudices with 'collateral source' information," that the jury was unable to reach beyond the liability issue. We disagree. First of all, plaintiff's income from her clerk-typist job was never stated because counsel for plaintiff objected to the question as being irrelevant. Second, plaintiff testified that although the Jims had built a new home within the last year, it was on a leased homesite on the Navajo Reservation. Third, plaintiff testified that she and her husband owned a car and pickup truck. No evidence was presented as to make or model or even if they were paid for. Plaintiff's claim that defendant's inquiries were prejudicial to her are without merit.

### d. *Trial Court's Personal Distractions During Trial*

■ The record does not support plaintiff's claims that the trial judge suffered "extreme strain" during trial due to his divorce proceedings which were contemporaneous with trial. Plaintiff also complains on appeal that the trial court failed to give opening instructions. We note, however, that when the trial court noted its mistake and brought it to the attention of counsel, neither party voiced an objection; therefore, it will not be considered on appeal. *See Morris v. Dodge Country, Inc.,* 85 N.M. 491, 513 P.2d 1273 (Ct.App.1973). Finally, the trial judge's levity with the jury concerning his required presence in a different courtroom, while perhaps inappropri-

ate, did not constitute harmful error nor did plaintiff object. Failure to object will generally preclude appellate review of that issue. *State v. Muise,* 103 N.M. 382, 707 P.2d 1192 (Ct.App.1985).

We find that plaintiff's complaints against the trial judge are either outside the record, in which case this court cannot review them, *see Dominguez v. Rogers,* 100 N.M. 605, 673 P.2d 1338 (Ct.App.1983), or plaintiff failed to timely object. *State v. Muise.* In any event, there is no indication of prejudice.

### e. *Cumulative Error*

As to defendant's claim of cumulative error, the doctrine has not heretofore been applied in civil cases in New Mexico. *But see Marchese v. Warner Communications, Inc.,* 100 N.M. 313, 670 P.2d 113 (Ct.App. 1983); *see also Del Monte Banana Co. v. Chacon,* 466 So.2d 1167 (Fla.App.1985). Assuming without deciding it can be so applied, it would have no application here where no error is committed, and where plaintiff received a fair trial. *See State v. Taylor,* 104 N.M. 88, 717 P.2d 64 (Ct.App. 1986).

### CONCLUSION

■ While this court is not insensitive to the fact that the verdict in this case may seem harsh to plaintiff, it is within the province of the jury to weigh the evidence and credibility of the witnesses; and we will not substitute our judgment for that of the jury absent a lack of substantial evidence to support the verdict. *Lujan v. Reed,* 78 N.M. 556, 434 P.2d 378 (1967). For the foregoing reasons, the judgment of the trial court is affirmed.

IT IS SO ORDERED.

BIVINS and APODACA, JJ., concur.