2002-NMSC-003

40 P.3d 1002

**STATE of New Mexico, Plaintiff–Respondent,**

v.

**Michael TONEY, Defendant–Petitioner.**

**No. 26,618.**

Supreme Court of New Mexico.

Feb. 1, 2002.

Gary C. Mitchell, P.C., Gary C. Mitchell, Ruidoso, NM, Garza Law Firm, Carmen E. Garza, Las Cruces, NM, Susan Gibbs, Santa Fe, NM, for Petitioner.

Patricia A. Madrid, Attorney General, Joel Jacobsen, Assistant Attorney General, Santa Fe, NM, for Respondent.

## OPINION

SERNA, Chief Justice.

{1} Defendant Michael Toney was convicted following a jury trial of two counts of false imprisonment and one count of tampering with evidence. Defendant appealed a single issue, relating to a single count of false imprisonment, to the Court of Appeals: whether the trial court erred in admitting hearsay

testimony, either under the Rules of Evidence or under the Confrontation Clause of the Sixth Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment. The Court of Appeals affirmed by memorandum opinion based on this Court's opinions in *State v. Gonzales*, 1999–NMSC–033, 128 N.M. 44, 989 P.2d 419, *cert. denied*, 529 U.S. 1025, 120 S.Ct. 1434, 146 L.Ed.2d 323 (2000), and *State v. Torres*, 1998–NMSC–052, 126 N.M. 477, 971 P.2d 1267. This Court then granted Defendant's petition for writ of certiorari. We affirm.

## I. Facts

{2} The State charged Defendant with murder, false imprisonment, tampering with evidence, and various other crimes for his role in Ty Lowery's death. Defendant and several others were involved in an altercation with Lowery at Defendant's house. Lowery was shot at close range. Two witnesses, including Robert Aragon, an employee of Defendant, testified that Claudia Moreno shot Lowery. Adam Montoya, another employee of Defendant, took the wounded Lowery to a remote area and left him to die. Lowery's body was found at the remote location the following day. At trial, the State advanced the theory that Defendant ordered Moreno to shoot Lowery and then ordered Montoya to leave Lowery in an isolated area to die. The jury returned a verdict of guilty on two counts of false imprisonment and one count of tampering with evidence.

## II. Discussion

{3} The sole issue presented to this Court is whether the trial court erred in admitting an out-of-court statement. Specifically, Defendant complains about Aragon's testimony concerning an out-of-court statement made to him by Montoya. Aragon had been at Defendant's house on the night of the shooting and left after witnessing the shooting. Aragon encountered Montoya the following day and testified that he asked Montoya what happened after he, Aragon, had left Defendant's house following the shooting. Aragon testified: "[Montoya] proceeded to tell me that he had driven [the victim] to the river on the direction from [Defendant], to leave [the victim] at the river." We note that this testimony implicitly contains two out-of-court statements: (1) Defendant's statement to Montoya to leave the victim at the river; and (2) Montoya's statement to Aragon that he took the victim to the river on Defendant's direction on the previous night. The first statement is not hearsay. Defendant's statement to Montoya was a directive or a command and was offered not for its truth but for the fact that it was made. *See* Rule 11–801(C) NMRA 2002; *Jim v. Budd*, 107 N.M. 489, 491, 760 P.2d 782, 784 (Ct.App.1987) (stating that "statements or conduct which are non-assertive are not hearsay," that "implied assertions are not hearsay," and that "[t]he words, 'let the gates down against the chain,' is a direction and not an assertion that would either be true or false"); *see also* Fed.R.Evid. 801 advisory committee's note; *cf. State v. Ross*, 1996–NMSC–031, 122 N.M. 15, 20 n. 2, 919 P.2d 1080, 1085 n. 2 (concluding that a statement did not raise a "hearsay within hearsay" issue because the statement made by another to the declarant was not offered for its truth). Moreover, as the Court of Appeals observed, this statement would have been an admission by a party-opponent rather than hearsay even if it had been offered for its truth. Rule 11–801(D)(2)(a). The second statement identified above, however, is hearsay. Rule 11–801(C). The State offered Montoya's statement to Aragon under an exception to the hearsay rule, Rule 11–804(B)(3) NMRA 2002, and the trial court admitted the statement on this basis. Rule 11–804(B)(3) provides that a statement is not excluded by the hearsay rule if the declarant is unavailable and the statement "so far tended to subject the declarant to ... criminal liability ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true."

{4} Defendant does not challenge Montoya's unavailability. Defendant limits his claim of error to his contention that Montoya's statement was not a statement against penal interest. In particular, Defendant claims that Montoya's statement to Aragon shows blame shifting and is therefore inherently unreliable. According to Defendant,

this statement shows that Montoya was asserting a duress defense to Montoya's involvement in the crime. Defendant also claims that Aragon had a motive to lie because he made a deal with the State, which also made the statement unreliable. Thus, Defendant claims that the trial court abused its discretion in finding that this was a statement against penal interest admissible under Rule 11–804(B)(3).

■ {5} As an initial matter, we point out that Aragon's motive to lie, as opposed to the declarant Montoya's, is wholly irrelevant to the question of the admissibility of Montoya's statement as an exception to the hearsay rule. Aragon testified in court and was subject to full and complete cross-examination. The hearsay rule is not concerned with the veracity of the testifying witness. "The test under the catch-all rules is whether the out-of-court statement—not the witness's testimony—has circumstantial guarantees of trustworthiness. The credibility of the witness, who is subject to cross-examination, is irrelevant to the trustworthiness analysis." *State v. Williams*, 117 N.M. 551, 561, 874 P.2d 12, 22 (1994).

■ {6} With respect to Defendant's argument that the statement was not against Montoya's penal interest, we believe that the trial court correctly ruled that the statement is admissible under Rule 11–804(B)(3). Montoya's reference to his own involvement in the crime clearly falls within the parameters of this exception to the hearsay rule. Montoya admitted his involvement in serious crimes, including murder, and a reasonable person acting under similar circumstances would not have done so unless believing the statement to be true. Defendant argues, however, that Montoya's specific reference to acting on Defendant's direction is not against Montoya's penal interest. Defendant's argument is contrary to this Court's holdings in *Torres* and *Gonzales*. Montoya's reference to Defendant is a "facially-neutral but contextually-incriminating detail[ ] [that] may be admitted if a reasonable person in the declarant's position would not have revealed [it] unless believing [it] to be true due to [its] strong tendency to subject the declarant to criminal liability." *Torres*, 1998–NMSC–052,

¶ 14, 126 N.M. 477, 971 P.2d 1267. As with the statements at issue in *Torres* and *Gonzales*, Montoya's statement implicated him in serious crimes. The part of the statement referring to Defendant would provide necessary context to explain Montoya's motive for taking the victim to the river. This part of the statement also supports a conspiracy between Montoya and Defendant. The detail of Defendant's involvement "would significantly aid law enforcement officials in securing criminal liability" against Montoya, the declarant. *Torres*, 1998–NMSC–052, ¶ 17, 126 N.M. 477, 971 P.2d 1267; *accord Gonzales*, 1999–NMSC–033, ¶ 11, 128 N.M. 44, 989 P.2d 419. Further, as with the declarant in *Gonzales*, Montoya "made his statement to an acquaintance in casual conversation. There is no indication that [he] did not understand his statement to be disserving or that [he] made his statement pursuant to self-interest or some other countervailing motive." 1999–NMSC–033, ¶ 34, 128 N.M. 44, 989 P.2d 419. Contrary to Defendant's assertion, there is no indication from Montoya's statement that Montoya believed that he acted under duress. Furthermore, there is no apparent reason for Montoya to have made a false assertion of duress to an acquaintance before becoming a suspect in the killing. We do not believe that Montoya's statement can reasonably be interpreted as shifting blame to Defendant.

{7} In short, Montoya's statement "so far tended to subject [him] to ... criminal liability ... that a reasonable person in [Montoya's] position would not have made the statement unless believing it to be true." Rule 11–804(B)(3). Montoya's statement contains none of the dangers associated with out-of-court statements because his statement was unambiguous, it was genuinely contrary to his penal interest, it described events occurring on the night before the statement, and it concerned actions taken directly by Montoya. *See Williams*, 117 N.M. at 560–61, 874 P.2d at 21–22 (discussing "the four primary dangers of hearsay," including the danger that the witness misinterpreted the declarant, the danger that the declarant consciously lied, the danger that the declarant had a faulty memory, and the danger that the declarant

misperceived events). The trial court did not abuse its discretion in admitting the statement under Rule 11–804(B)(3).

{8} Defendant also contends that the admission of Montoya's statement violates the Confrontation Clause in the Sixth Amendment to the United States Constitution, as applied to New Mexico through the Fourteenth Amendment. Although Defendant references the right of confrontation in the New Mexico Constitution, he neither cites the specific provision in the Constitution providing this protection nor argues that the New Mexico Constitution should be interpreted more broadly than the Sixth Amendment in this context. *See State v. Gomez*, 1997–NMSC–006, ¶¶ 22–23, 122 N.M. 777, 932 P.2d 1 (discussing preservation requirements for a state constitutional argument). In any event, this Court's opinion in *Torres* adequately addresses Defendant's reference to the state constitution. *Torres*, 1998–NMSC–052, ¶¶ 25, 26 n. 3, 32, 126 N.M. 477, 971 P.2d 1267. Therefore, we limit our discussion to Defendant's right of confrontation under the Sixth and Fourteenth Amendments to the United States Constitution.

{9} In order to protect a defendant's right of confrontation, the United States Supreme Court has indicated that an out-of-court statement made by an unavailable declarant which is offered against an accused must "bear[ ] 'adequate indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). In *Torres*, this Court held that Rule 11–804(B)(3) is a firmly rooted exception to the hearsay rule for Confrontation Clause purposes, largely because we had limited the reach of Rule 11–804(B)(3) in accordance with the United States Supreme Court's interpretation of Federal Rule of Evidence 804(b)(3) in *Williamson v. United States*, 512 U.S. 594, 599–604, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994). *See Torres*, 1998–NMSC–052, ¶¶ 29–32, 126 N.M. 477, 971 P.2d 1267. However, Defendant contends that

Montoya's statement must be viewed as inherently unreliable pursuant to the plurality opinion of the United States Supreme Court in *Lilly v. Virginia*, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999). Defendant's contention is inconsistent with our discussion of *Lilly* in *Gonzales*.

{10} In *Lilly*, the plurality stated that the category of declarations against penal interests, as interpreted under Virginia's rules of evidence, is too broad to make generalizations for purposes of a Confrontation Clause analysis and that accomplices' confessions to police inculpating a criminal defendant do not fall within a firmly rooted hearsay exception and therefore must be examined under the "particularized guarantees of trustworthiness" prong of the Confrontation Clause inquiry. *Id.* at 127, 134–36, 119 S.Ct. 1887 (plurality opinion). The defendant in *Gonzales*, like Defendant in the present case, argued that our Confrontation Clause analysis in *Torres* was in conflict with *Lilly*. *Gonzales*, 1999–NMSC–033, ¶ 32, 128 N.M. 44, 989 P.2d 419. We unanimously rejected this argument for two reasons. First, we believed that *Lilly* was distinguishable on its facts. *Gonzales*, 1999–NMSC–033, ¶ 34, 128 N.M. 44, 989 P.2d 419. *Lilly* involved a statement given to the police during a custodial interrogation in response to leading questions, and the declarant asserted that the defendant killed the murder victim. *Id.*; *see United States v. Shea*, 211 F.3d 658, 669 (1st Cir.2000) ("*Lilly*'s main concern was with statements in which, as is common in police-station confessions, the declarant admits only what the authorities are already capable of proving against him [or her] and seeks to shift the principal blame to another (against whom the prosecutor then offers the statement at trial)."), *cert. denied*, 531 U.S. 1154, 121 S.Ct. 1101, 148 L.Ed.2d 973 (2001). By contrast, like the present case, *Gonzales* involved a statement made to an acquaintance in casual conversation, and the declarant acknowledged an active role in the killing. *Gonzales*, 1999–NMSC–033, ¶ 34, 128 N.M. 44, 989 P.2d 419.

{11} Second, we rejected the defendant's reliance on *Lilly* in *Gonzales* because we concluded that *Lilly* did not preclude a de-

termination that New Mexico's Rule 11–804(B)(3) is a firmly rooted exception. *Gonzales,* 1999–NMSC–033, ¶ 36, 128 N.M. 44, 989 P.2d 419. Beyond the fact that the firmly rooted exception discussion in *Lilly* was contained in a plurality opinion, and thus is not binding on this Court, *see Shea,* 211 F.3d at 669 (stating that *"Lilly's* full reach may be unclear [because] there was no single 'majority' opinion"); *Taylor v. Commonwealth,* 63 S.W.3d 151, 167 (Ky.2001) ("As a plurality opinion, [*Lilly* ] is not binding precedent on the issue of whether statements against penal interests are 'firmly rooted' for Confrontation Clause purposes."), we noted in *Gonzales* that "the co-conspirator's confession in *Lilly* would have failed to qualify as a statement against penal interest in New Mexico under Rule 11–804(B)(3), because the confession in that case did not inculpate the declarant as to the murder." *Gonzales,* 1999–NMSC–033, ¶ 37, 128 N.M. 44, 989 P.2d 419. Thus, *Lilly* concerned a broader exception to the hearsay rule than New Mexico's Rule 11–804(B)(3). As a result, based on our more restrictive construction of Rule 11–804(B)(3) in accordance with the Supreme Court's opinion in *Williamson,* we determined that New Mexico's Rule 11–804(B)(3) is a firmly rooted exception to the hearsay rule because "the 'particularized guarantees of trustworthiness' imposed by the federal Confrontation Clause are inherently and necessarily a part of the statement-against-interest analysis under our Rule 11–804(B)(3)." *Gonzales,* 1999–NMSC–033, ¶ 39, 128 N.M. 44, 989 P.2d 419; *accord United States v. Gallego,* 191 F.3d 156, 167 n. 5 (2d Cir.1999) (declining to decide whether Federal Rule of Evidence 804(b)(3), as interpreted in *Williamson,* is a firmly rooted exception but noting that *Lilly* "does not foreclose [that] possibility" because "any hearsay statement admitted consistent with the requirements of Rule 804(b)(3) . . . is considerably more reliable than the largely 'non-self-inculpatory' declaration disapproved by the plurality in *Lilly* "). In a recent unanimous opinion, we "reaffirm[ed] that, in New Mexico, a statement against penal interest within the meaning of Rule 11–804(B)(3) is a firmly rooted exception to the hearsay rule." *State v.*

*Martinez–Rodriguez,* 2001–NMSC–029, ¶ 27, 131 N.M. 47, 33 P.3d 267.

{12} As we determined in *Gonzales, Lilly* is distinguishable from this case because Montoya made his statement to an acquaintance in a casual conversation rather than to the police during a custodial interrogation. For Confrontation Clause purposes, this distinction is critical. *See, e.g., Denny v. Gudmanson,* 252 F.3d 896, 903 (7th Cir.), *cert. denied,* —— U.S. ——, 122 S.Ct. 311, 151 L.Ed.2d 232 (2001); *United States v. Westmoreland,* 240 F.3d 618, 627–28 (7th Cir. 2001); *United States v. Boone,* 229 F.3d 1231, 1234 (9th Cir.2000), *cert. denied,* 531 U.S. 1170, 121 S.Ct. 1138, 148 L.Ed.2d 1002, *and cert. denied,* 532 U.S. 1013, 121 S.Ct. 1747, 149 L.Ed.2d 669 (2001); *Shea,* 211 F.3d at 669; *Stevens v. People,* 29 P.3d 305, 312–13 (Colo.2001); *State v. Henderson,* 620 N.W.2d 688, 697–98 (Minn.2001); *State v. Issa,* 93 Ohio St.3d 49, 752 N.E.2d 904, 919 (2001). Because Montoya's statement is admissible under Rule 11–804(B)(3) and was not made during a custodial interrogation, Montoya's statement necessarily contains particularized guarantees of trustworthiness, and it is unnecessary for us to undertake any further inquiry into Defendant's Confrontation Clause argument.

### III. Conclusion

{13} The trial court did not abuse its discretion in finding the statement was admissible under Rule 11–804(B)(3) as a statement against penal interest. The admission of the statement did not violate the Confrontation Clause. We affirm Defendant's convictions of two counts of false imprisonment and one count of tampering with evidence.

{14} **IT IS SO ORDERED.**

WE CONCUR: JOSEPH F. BACA, Justice, PAMELA B. MINZNER, Justice, PETRA JIMENEZ MAES, Justice.

GENE E. FRANCHINI, Justice (dissenting).

FRANCHINI, Justice (dissenting).

{15} I respectfully dissent.

{16} Adam Montoya did not testify at trial and therefore was not subject to cross-examination. However, over objection, Robert Aragon testified that Montoya told him that Defendant instructed Montoya to "leave [the victim] at the river." Montoya's statement to Aragon was hearsay and could not be admitted unless, pursuant to Rule 11–804(B)(3) NMRA 2002, it "so far tended to subject [Montoya] to ... criminal liability ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." It is my opinion that because Montoya's statement attempted to shift blame from himself to Defendant, it was more exculpatory than inculpatory, and therefore lacked sufficient reliability to exempt it from the hearsay rule.

{17} Furthermore, I agree with Defendant that the United States Supreme Court, in a plurality opinion, has expressed distrust for precisely this sort of evidence. *Lilly v. Virginia,* 527 U.S. 116, 131, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999). In *Lilly,* the Court recognized that "accomplices' confessions that incriminate defendants" are "presumptively unreliable." *Id. See also Denny v. Gudmanson,* 252 F.3d 896, 903 (7th Cir.2001) (describing "a confession that shifts or spreads blame from the declarant to incriminate co-criminals" as the type of statement "whose reliability is particularly suspect"). The record is devoid of other indications of reliability that would overcome my initial distrust. It is my opinion that the trial court's admission of this evidence without the possibility of cross-examination violates the confrontation clauses of both the United States and New Mexico constitutions. Contrary to the majority's conclusion, I would reverse the Court of Appeals and remand for a new trial on one count of false imprisonment.