This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37419**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**MARIO Z. RAEL,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**Sarah C. Backus, District Judge**

Hector H. Balderas, Attorney General
Benjamin Lammons, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**HANISEE, Chief Judge.**

**{1}** Mario Rael (Defendant) was found guilty of aggravated battery against a household member (great bodily harm), contrary to NMSA 1978, Section 30-3-16(C) (2008, amended 2018), assault (attempted battery) against a household member, contrary to NMSA 1978, Section 30-3-14 (1995), and false imprisonment, contrary to NMSA 1978, Section 30-4-3 (1963). On appeal, Defendant argues that there was insufficient evidence to sustain his convictions and raises three evidentiary objections regarding Victim's testimony: (1) the State improperly used Victim's prior statement

made in support of an application for restraining order as substantive evidence and to impeach her at trial; (2) the district court improperly permitted Victim to testify under the influence of drugs; and (3) the district court abused its discretion in admitting prejudicial evidence of the jail call between Victim and Defendant. Defendant also raised a double jeopardy challenge regarding his convictions for both false imprisonment and assault based on the same conduct. However, the State conceded that there was insufficient evidence for the assault conviction, and thus, this Court need not reach that issue. We agree with the State's concession, reverse Defendant's conviction for assault, and affirm his remaining convictions.

## BACKGROUND

**{2}** Because this is a memorandum opinion and the parties are familiar with the facts and procedural history of this case, we set forth here only a brief overview of the historical facts of this case. We reserve discussion of specific facts where necessary to our analysis.

**{3}** In August 2016 Defendant beat Victim, his wife, for her alleged infidelity. Defendant admitted to police officers, "I know it looks bad . . . I blew up. I just hit her one time though." Victim's sister testified that she picked Victim up from Defendant and Victim's shared home, took Victim to their grandfather's house, and subsequently took Victim to the hospital because she required medical attention. At the hospital, the emergency room doctor treated Victim for injuries to her face, ribs, and abdomen, which Victim explained were caused by her husband beating her with a wooden statue.

**{4}** Thereafter, in October 2016, Defendant was indicted on one count each of aggravated battery against a household member (great bodily harm), assault with the intent to commit a violent felony against a household member, false imprisonment, and resisting, evading, or obstructing an officer (arrest), contrary to NMSA 1978, Section 30-22-1-(B) (1981). Following a two-day trial, the jury convicted Defendant of the first three charges; Defendant separately plead guilty to the resisting charge. The district court sentenced Defendant to a total incarceration period of twelve-and-a-half years, of which four years were suspended. Defendant appeals.

## DISCUSSION

### I.    The State Properly Introduced Victim's Prior Inconsistent Statement

**{5}** Defendant argues that the district court erred in admitting Victim's prior statement from her application for a restraining order because the statement did not meet the requirements for admission as substantive evidence, was not properly used to refresh her recollection, and was improper impeachment evidence because the State only called Victim as a witness in order to impeach her. We are unpersuaded.

**{6}** The day before trial, Defendant filed a motion in limine seeking to prevent admission of bad prior acts evidence under Rule 11-404(B) NMRA by use of Victim's

prior statements made in a restraining order application. The district court expressed its understanding that the evidence of Victim's prior statement in the application did not describe prior bad acts of Defendant, but rather was a prior statement provided under oath in an affidavit for a restraining order against Defendant as a result of the particular incident that gave rise to Defendant's current charges. Therefore, the district court determined that *if* Victim testified inconsistently or stated that she does not recall the events in question during trial, the prior statement may be introduced (1) to impeach Victim's testimony; (2) to refresh Victim's memory; or (3) to serve as substantive evidence as a prior inconsistent statement of a witness made under oath.

**{7}** Before Victim testified at trial, Defendant renewed his motion in limine, again on the grounds that use of Victim's prior statement in her restraining order application would introduce evidence of prior bad acts in violation of Rule 11-404(B). In response, the district court reiterated that the application related to the incident at issue, but noted the objection for the record. During her testimony, Victim was uncooperative and reluctant to testify, repeatedly responding that "she did not recall" in response to the questions regarding her injuries, and even contradicting her own testimony while on the stand.

**{8}** Accordingly, the State attempted to refresh Victim's recollection using her prior statement given under oath in the restraining order application. Victim indicated that she did not remember how she sustained her injuries, due to her drug and alcohol use and mental health issues, but explained that the prior statement was based on her memory at that time. Defendant then objected to the State's examination as "improper impeachment," and the district court judge overruled the objection on the grounds that the State's questioning was a proper attempt to refresh Victim's memory. After further probing, Victim stated that she did not want to remember what happened, did not want to be in court, and did not want her memory refreshed. Victim also interjected that she was "out of her mind" when she gave the statement and that the prior statement was unreliable, language the State moved to strike as unresponsive to the question posed.

**{9}** Given Victim's contradictory testimony, the district court judge intervened to clarify Victim's statements and asked if reviewing the prior statement would refresh her memory, to which Victim responded "Probably not." The district court then prompted Victim to review her prior statement in her restraining order application, in case anything in the application could refresh her recollection. Upon reviewing her prior statement, Victim admitted that she remembered making the statement and that it was indicative of what occurred on more than one occasion, not just one night.[1]

**{10}** Thereafter, the State requested to treat the witness as a hostile witness, to which Defendant did not object. Victim then responded affirmatively to a series of questions

---

[1]On appeal, Defendant does not renew his trial objection that the testimony constitutes prior bad acts evidence under Rule 11-404(B). Consequently, our opinion focuses only on Defendant's challenge to the admission of the prior statement as improper impeachment. Moreover, our review of the record indicates that evidence of prior occasions of domestic violence was not contained in the restraining order application, but was apparently blurted out by Victim during the examination regarding her prior statement.

regarding her prior statement, admitting that she stated Defendant inflicted her injuries, and that when Victim attempted to leave, Defendant stopped her, and beat her again. Victim also testified that she did not recall saying that she was afraid for her life, but that "if [she] said it, [she] probably meant it" and thereafter she proceeded to affirm the veracity of her prior statement.

**{11}**    Our review of the trial transcript reveals that the prior statement was first introduced in an attempt to refresh Victim's recollection, and due to Victim's contradictory statements, the prior inconsistent statement was then used to impeach her. *See* Rule 11-612 NMRA (explaining options available to refresh the recollection of a witness); *State v. Macias*, 2009-NMSC-028, ¶ 24, 146 N.M. 378, 210 P.3d 804 ("If the witness testifies that the exhibit *might* refresh his or her memory, the witness reviews the exhibit without the jury viewing or listening to the exhibit." (emphasis added)), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110; *State v. Orona*, 1979-NMSC-011, ¶ 23, 92 N.M. 450, 589 P.2d 1041 (explaining that before a writing can be used to refresh recollection, the witness's memory on the subject must be exhausted, time, place, and person to whom statement was given must be established and witness must acknowledge statement). Moreover, the prior statement was admissible as substantive evidence because it was an affidavit *given under oath* in a restraining order application filed by Victim in court, and Defendant had an opportunity to cross-examine Victim about the prior statement at trial. *See* Rule 11-801(D)(1)(a) NMRA (stating that a prior inconsistent statement is "not hearsay" when the declarant testifies and is subject to cross-examination about the prior statement, and when the statement was given under oath subject to the penalty of perjury at a trial, hearing, other proceeding, or in a deposition). We are unpersuaded by Defendant's argument that the prior statement was not "given at a trial, hearing, . . . other proceeding, or in a deposition." Here, consistent with Rule 11-801, the prior statement was filed with the court under oath, as an affidavit in restraining order application. As such, the central issue here is whether the State properly impeached Victim with her prior inconsistent statement.

**{12}**    We generally review evidentiary challenges like this one for an abuse of discretion. *See State v. Lopez*, 2011-NMSC-035, ¶ 14, 150 N.M. 179, 258 P.3d 458 ("Admission of a prior inconsistent statement is within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion." (omission, internal quotation marks, and citation omitted)). "A trial court abuses its discretion when a ruling is clearly against the logic and effect of the facts and circumstances of the case, such that it can be characterized as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted). However, if an evidentiary issue is not properly preserved, we review for plain error. *See* Rule 11-103(A)(1)(b) NMRA ("A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party . . . if the ruling admits evidence, the party, on the record . . . [and] states the specific ground, unless it was apparent from the context[.]"); *State v. Carrillo*, 2017-NMSC-023, ¶ 20, 399 P.3d 367 ("In order to preserve an issue for appeal, a defendant must make a timely objection that *specifically* apprises the trial court of the

nature of the claimed error and invokes an intelligent ruling thereon." (emphasis added) (internal quotation marks and citation omitted)).

**{13}** Here, Defendant neither specifically nor timely objected regarding the State's use of the prior inconsistent statement to impeach Victim, focusing instead on prior acts evidence under Rule 11-404, and thus Defendant did not properly preserve this issue for appeal. When we review an unpreserved claim, we reverse only if "the admission of the challenged evidence is plain error and it affects a substantial right" of Defendant. *Carrillo*, 2017-NMSC-023, ¶ 24; *see* Rule 11-103(E). "To constitute plain error, [the error] must give rise to an injustice that creates grave doubts concerning the validity of the verdict." *Carrillo*, 2017-NMSC-023, ¶ 24 (internal quotation marks and citation omitted). To determine whether an error rises to the level of plain error, "we . . . examine the alleged errors in the context of the testimony as a whole." *State v. Montoya*, 2015-NMSC-010, ¶ 46, 345 P.3d 1056 (internal quotation marks and citation omitted).

**{14}** Our review of the record indicates that the district court properly allowed the State to impeach Victim with her prior inconsistent statement. First, as Defendant acknowledges, the State is permitted to impeach its own witness. *See* Rule 11-607 NMRA ("Any party, including the party that called the witness, may attack the witness's credibility."). Second, despite Defendant's contentions to the contrary, this case does not present a circumstance where the State's primary purpose in subpoenaing Victim to testify was solely to impeach her with evidence that would otherwise be inadmissible. *See State v. Brown*, 1998-NMSC-037, ¶ 52, 126 N.M. 338, 969 P.2d 313 ("[I]f a party *knowingly* calls a witness for the primary purpose of introducing a prior statement which otherwise would be inadmissible, impeachment should ordinarily be excluded." (emphasis added) (internal quotation marks and citation omitted)); *see also Lopez*, 2011-NMSC-035, ¶ 16 (stating that if the primary purpose of the proffered testimony is to introduce relevant evidence, and not a "back-door attempt to introduce otherwise inadmissible hearsay under the auspices of impeachment," then the district court should allow admission of the evidence). In contrast to *Brown* and *Lopez*, the State impeached Victim with admissible substantive evidence, and thus this case does not present the same problem that compelled our Supreme Court to examine whether the state had a proper primary purpose in impeaching its own witnesses in those cases. *See, e.g.*, *Lopez*, 2011-NMSC-035, ¶ 16.

**{15}** As our Supreme Court indicated in *Brown*, "where a witness gives both favorable and unfavorable testimony, the party calling the witness should usually be permitted to impeach the witness with a prior inconsistent statement[,]" subject to the district court's "broad discretion in determining whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice or confusion." 1998-NMSC-037, ¶ 52. Here, there is no question that Victim provided both favorable and unfavorable testimony to the State's case. She provided testimony that supported the State's position on two matters that Defendant acknowledges were in controversy: (1) the cause of her injuries and (2) the severity of those injuries. Victim gave inculpatory testimony on both issues. She testified that her hair was matted in blood; she had bruising on her face; she suffered from fractured ribs that took several weeks to heal;

and that her father and sister brought her to the emergency room because she required medical attention. Victim further testified that except for when she went to work or when she was incarcerated, she did not leave her home, placing her in the home with Defendant at the time of the incident, and that the beatings went on for days and she feared for her life. Victim also provided testimony that was "affirmatively harmful" to the State, stating in various instances that Defendant did not injure her while in other instances stating that she could not recall whether Defendant injured her. *See Lopez*, 2011-NMSC-035, ¶ 19 (discussing unfavorable testimony as "affirmatively harmful"). As well, Victim alleged that some of her injuries were due to an undisclosed traffic accident, despite telling her sister, father, and doctor that Defendant inflicted her injuries.

**{16}** Consistent with *Brown*, because Victim gave both favorable and unfavorable testimony to the State's case, the prosecution was entitled to offer evidence of any prior inconsistent statements to impeach the unfavorable portion of Victim's testimony. *See* 1998-NMSC-037, ¶ 52. Defendant did not argue that the affidavit should otherwise have been excluded under Rule 11-403 NMRA, and has therefore failed to establish any error on the part of the district court. *See Brown*, 1998-NMSC-037, ¶¶ 52-53 (stating that the trial judges have broad discretion in addressing circumstances where parties seek to impeach their own witnesses, including whether otherwise admissible evidence may be excluded under Rule 11-403). Moreover, Victim's contradictory testimony during both the State and defense examinations suggested that she was feigning memory loss. Accordingly, impeaching Victim's testimony with her prior inconsistent statement was appropriate.

**{17}** Finally, Defendant argues that the State's use of leading questions was also an improper attempt to refresh Victim's memory, but we address the challenge here since the leading questions followed an unsuccessful attempt to refresh Victim's recollection, and were ultimately used to impeach Victim. We note initially that Defendant failed to object to the State's request to treat Victim as an adverse witness. *See* Rule 11-611(C) NMRA (permitting the use of leading question when a party calls a hostile witness). While not technically an evidentiary question, it is well recognized that whether or not to permit leading questions on direct examination is within the discretion of the court under Rule 11-611. *See Jim v. Budd*, 1987-NMCA-079, ¶ 18, 107 N.M. 489, 760 P.2d 782 ("Although a party has a right to use leading questions when interrogating an adverse witness, that rule is subject to the trial court's right to exercise control." (citation omitted)); *State v. Herrera*, 1972-NMCA-068, ¶ 14, 84 N.M. 46, 499 P.2d 364 ("The allowance of leading questions is discretionary with the trial court."). We conclude the district court exercised its discretion appropriately in permitting the State to treat Victim as an adverse witness.

**{18}** Defendant cites *Orona*, 1979-NMSC-011, ¶ 19, as analogous to the present case because, there, leading questions were used to establish elements of the crime and the witness merely responded with a simple answer of "yes." *See id.* ¶ 21 ("Developing testimony by the use of leading questions must be distinguished from substituting the words of the prosecutor for the testimony of the witness."). We consider the present case distinguishable from *Orona* since Victim did not merely provide a simple "yes," but

instead responded more fully, when she was asked a leading question. *See id.* ¶¶ 24-30. Moreover, unlike in *Orona*, here, the State properly refreshed Victim's memory and provided an opportunity for Victim to provide independent testimony. *See id.* ¶ 25.

**{19}** For these reasons, we conclude that the district court did not err.

## II.    The District Court Did Not Err in Admitting the Jail Phone Call

**{20}** Defendant further contends the district court erred in admitting testimony about the jail phone call between Defendant and Victim, and that such was unfairly prejudicial. We disagree.

**{21}** The district court permitted the State to examine Victim regarding a phone call between her and Defendant during the week of trial after she denied speaking with Defendant at all. Victim then admitted that she indeed spoke with Defendant, and told him, "You are telling everyone in there that I am ratting on you. Stop telling everyone that I am . . . snitching on you."

**{22}** Our review of the record indicates that the examination regarding whether Victim telephonically spoke with Defendant was proper to impeach Victim's direct statement to the contrary since it related to a fact of consequence in the litigation—ascertaining whether she had been influenced by Defendant. *See Lopez*, 2011-NMSC-035, ¶ 18. It was also relevant to Victim's potential bias. *See State v. Santillanes*, 1974-NMCA-092, ¶ 5, 86 N.M. 627, 526 P.2d 424 ("The bias or prejudice of a witness is material because it affects the credibility of the witness. Bias of a witness is always relevant." (internal quotation marks and citations omitted));  *see also State v. Roberts*, 1914-NMSC-004, 18 N.M. 480, 138 P. 208 (noting that the state has the right to expose existing relationships between the testifying witness and the defendant).

**{23}** Moreover, while under Rule 11-403 the district court must determine whether the probative value of the evidence substantially outweighs the risk of unfair prejudice, the rule "does not guard against *any* prejudice whatsoever, but only against unfair prejudice." *State v. Bailey*, 2017-NMSC-001, ¶ 12, 386 P.3d 1007 (emphasis added). Here, Defendant argues that the questioning regarding the jail phone call suggested that Defendant had threatened Victim about testifying against him and thus was highly prejudicial. In fact, such testimony was highly probative as to Victim's credibility, and while potentially prejudicial, the prejudice was not *unfair*, and in any event, did not substantially outweigh the probative value of the evidence. Therefore, we conclude that the district court did not abuse its discretion in admitting testimony regarding the jail phone call.

## III.    Victim Was Competent to Testify

**{24}** Defendant next argues that Victim should not have been permitted to testify over Defendant's objection that she was allegedly under the influence of drugs. We are unpersuaded.

**{25}** Prior to Victim's testimony, Defendant alerted the district court that Victim may be under the influence, and the judge noted that defense counsel could ask the witness directly. On cross examination, Defendant questioned Victim regarding her drug use, specifically whether she was under the influence of drugs while on the stand, and Victim replied that she was in a suboxone program in Questa, New Mexico, but that she "was not under the influence right now," that she "was fine right now," and that the last time she used heroin or methamphetamines was one month ago. On redirect examination, when the State tried to impeach Victim's statement that she had not spoken with Defendant earlier in the week with evidence of the jail phone call with Defendant, Defendant objected, raising concern that Victim was impaired and should be drug tested. The district court ruled that because Victim denied being under the influence, such was a question of credibility for the jury.

**{26}** A district court's determination as to whether a witness is competent to testify is reviewed for an abuse of discretion. *State v. Hueglin*, 2000-NMCA-106, ¶ 15, 130 N.M. 54, 16 P.3d 1113. Rules 11-601 and 11-602 NMRA provide that "[e]very person is competent to be a witness unless these rules provide otherwise[,]" when "the witness has personal knowledge of the matter." The use of intoxicants or drug addiction does not itself make a witness incompetent to testify, and the challenging party "bears the burden to show the witness is incompetent." *See State v. Candelaria*, 2019-NMSC-004, ¶¶ 44-45, 434 P.3d 297 (holding that the trial court did not abuse its discretion in allowing a witness to testify while the witness was under the influence of pain medication where the witness did not appear to have any difficulty answering questions and since any credibility determination is left to the jury). The district court need "only [have] ensure[d] that a witness [met] a minimum standard, such that a reasonable person could put any credence in their testimony." *Id.* ¶ 43 (internal quotation marks and citation omitted).

**{27}** Given that Victim needed only to meet a minimum standard of competency, that Victim denied being under the influence, and that there is no evidence of slurred speech or other indication of intoxication, we agree with the district court that the remaining question of credibility was a jury determination. *See id.* ¶ 45 ("The jury alone is the judge of the credibility of the witnesses and determines the weight afforded to testimony."); *State v. Haskins*, 2008-NMCA-086, ¶ 8, 144 N.M. 287, 186 P.3d 916 ("We do not substitute our judgment for that of the fact[-]finder concerning the credibility of witnesses or the weight to be given their testimony."). Thus, we hold that the district court properly exercised its discretion in permitting Victim to testify, not ordering a drug test, and leaving the question of credibility to the jury.

## IV. Sufficient Evidence Supports Defendant's Convictions for False Imprisonment and Aggravated Battery Against a Household Member

**{28}** Defendant next argues there was insufficient evidence to sustain his convictions for false imprisonment and aggravated battery against a household member. We disagree.

**{29}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52 (internal quotation marks and citation omitted). We "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883. We address each conviction in turn.

## A.    False Imprisonment

**{30}** In order to convict Defendant for false imprisonment, the jury was required to find "(1) [D]efendant restrained or confined [Victim] against her will; [and] (2) [D]efendant knew that he had no authority to restrain or confine [Victim]." Defendant contends that the only evidence to support the conviction was in State's leading examination of Victim regarding her prior inconsistent statement, wherein Victim affirmed that she stated every time she attempted to leave, Defendant stopped her, and beat her again. Defendant again asserts that the prior statement cannot be used as substantive evidence under Rule 11-801(D)(1)(a) or under the hearsay exception under Rule 11-803 NMRA (2016). However, we have already held to the contrary. *See supra* Section I. Moreover, we note again that Victim not only responded affirmatively to the State's leading questions, but also responded to a question about whether she stated she was afraid for her life by testifying that though she does not recall saying that, "if [she] said it, [she] probably meant it" and thereafter proceeded to affirm that the statement was true.

**{31}** The State also presented circumstantial evidence of false imprisonment. *See Montoya*, 2015-NMSC-010, ¶ 52 (providing that the standard of review for a sufficiency inquiry is "whether substantial evidence of either a direct or *circumstantial* nature exists to support a verdict of guilty beyond a reasonable doubt" (emphasis added)). Victim's parole officer testified that Victim failed to report for her probation appointment, and that two minutes after calling Defendant to determine her whereabouts, Victim called the parole officer crying, shaking, and apparently scared. On the call, Defendant was angrily yelling in the background, and Victim repeated to the parole officer what Defendant told her to say. Victim's sister further testified that Victim had been unresponsive to approximately ten text messages and six calls over a period of days, which is what prompted her to visit Victim at Defendant's house. While Defendant may disagree with the version of events the testimony presented, questions as to witness credibility or the weight of the evidence are left to the jury. *See State v. Godoy*, 2012-NMCA-084, ¶ 18, 284 P.3d 410; *State v. Estrada*, 2001-NMCA-034, ¶ 40, 130 N.M. 358, 24 P.3d 793. The question for us on appeal is to determine whether the trial court's "decision is supported by substantial evidence, not whether the [trial] court could have reached a different conclusion." *In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318. Accordingly, given the testimony of Victim, Victim's sister, and the parole officer, we

conclude there was sufficient evidence for a rational jury to conclude that Defendant falsely imprisoned Victim.

## B.     Aggravated Battery Against a Household Member

**{32}**     In order to find Defendant guilty of aggravated battery with great bodily harm against a household member, the jury was required to find beyond a reasonable doubt that (1) "[D]efendant touched or applied force to [Victim] by beating her"; (2) "[D]efendant intended to injure Victim"; and (3) "[D]efendant caused great bodily harm to [Victim] or acted in a way that would likely result in death or great bodily harm to [Victim.]" Great bodily harm was further defined as "an injury to a person which creates a high probability of death or results in serious disfigurement or results in loss of any member or organ or body or results in permanent or prolonged impairment of the use of any member or organ of the body." Defendant argues that the State failed to prove "great bodily harm." However, under the given jury instructions, the State was required to prove *either* that Defendant caused great bodily harm *or* acted in a way that would likely result in death or great bodily harm, and we conclude that based on the evidence presented at trial, the State satisfied its burden of proving this element beyond a reasonable doubt.

**{33}**     Victim's sister testified that when she picked up Victim from Defendant and Victim's house, Victim walked to the car slowly as if she was in significant pain, that the left side of Victim's face was completely swollen, that Victim had a black eye, that her hair was matted in blood, that there were cuts in her head, some of which were still fresh. Victim's father also corroborated that he saw Victim "bloody," "beaten," with "a big black eye" and stated that Victim had blood in her hair, and "purple black" bruises on her arms. Consistent with Victim's sister and father's testimonies, the emergency room doctor testified that he treated Victim for orbital, nasal, and rib fractures, two scalp lacerations, and a cerebral contusion because Victim informed him that she had lost consciousness. Victim also told the doctor that she had been assaulted by her husband with a wooden statue, causing the injuries to her face, ribs, and abdomen.

**{34}**     As noted earlier, Victim herself provided contradictory testimony, at times stating that she could not recall how she sustained her injuries and whether Defendant caused her injuries, even claiming that she had been in a car accident, while at other times affirming her prior statement that Defendant caused her injuries. The State also introduced photographs of Victim's injuries into evidence, raising doubts about Victim's testimony that she was in a car accident as well as Defendant's arrest video, wherein Defendant admits that he "blew up" because of Victim's repeated infidelity but claims that he "just hit her one time." In viewing the evidence in the light most favorable to the verdict and disregarding all evidence to the contrary, we conclude there was sufficient evidence to prove that Defendant acted in a manner that would likely result in death or great bodily harm, and uphold Defendant's conviction for aggravated battery with great bodily harm against a household member. *See Cunningham*, 2000-NMSC-009, ¶ 26; *Rojo*, 1999-NMSC-001, ¶ 19.

**CONCLUSION**

**{35}** For these reasons, we affirm Defendant's convictions for aggravated battery and false imprisonment, and reverse Defendant's conviction for assault on a household member.

**{36} IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**ZACHARY A. IVES, Judge**