2002-NMSC-024

52 P.3d 948

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Valentin REYES, Defendant–Appellant.**

No. 26,304.

Supreme Court of New Mexico.

July 24, 2002.

Law Office of Nancy L. Simmons, P.C., Nancy L. Simmons, Albuquerque, NM, for Appellant.

Patricia A. Madrid, Attorney General, Elizabeth Blaisdell, Assistant Attorney General, Santa Fe, NM, for Appellee.

## OPINION

FRANCHINI, Justice.

{1} Following a jury trial, Defendant Valentin Reyes was convicted in the deaths of three men of the following crimes: three counts of first degree murder by willful, deliberate, and premeditated murder, contrary to NMSA 1978, § 30–2–1(A)(1) (1994); three counts of felony murder contrary to Section 30–2–1(A)(2); conspiracy to commit murder contrary to NMSA 1978, § 30–28–2 (1979) and Section 30–2–1(A); one count of kidnapping with great bodily harm contrary to NMSA 1978, § 30–4–1 (1995); conspiracy to commit kidnapping contrary to Section 30–28–2 and Section 30–4–1; two counts of false imprisonment contrary to NMSA 1978, § 30–4–3 (1963); one count of armed robbery contrary to NMSA 1978, § 30–16–2 (1973); conspiracy to commit armed robbery contrary to Section 30–28–2 and Section 30–16–2; three counts of tampering with evidence contrary to NMSA 1978, § 30–22–5 (1963); unlawful taking of a vehicle contrary to NMSA 1978, § 66–3–504 (1998); and receiving a stolen vehicle contrary to NMSA 1978, § 66–3–505

(1978). This Court has jurisdiction under Rule 12–102(A)(1) NMRA 2002 (providing for direct appeal to the Supreme Court in cases in which a sentence of life imprisonment has been imposed).

{2} On appeal, Defendant asserts that the following errors occurred at trial: (1) multiple convictions for overlapping or contradictory charges violated his double jeopardy and due process protections; (2) the trial court erred in various evidentiary rulings; (3) the kidnapping jury instruction was incorrect; (4) there was insufficient evidence to support the jury's verdict; and (5) his trial counsel was ineffective. We affirm all convictions except, under the facts of this case, the conviction for receiving a stolen vehicle.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{3} On February 25, 1997, the bodies of two men were found in a motel room in Albuquerque, New Mexico. Both men were strangled to death; they had been bound and one of them had been severely beaten. The man who had rented the room the night before was not found in the room. His body was not found until March 12, 1997, when a state highway employee spotted the body in a ravine at the bottom of a steep embankment along Interstate 25, north of Santa Fe, New Mexico. This third victim had also been killed by strangulation; he was gagged and also bound hand and foot in a manner similar to the victims in the motel room. His body had been wrapped in a bedspread from the motel. The key to the motel room was found in his pocket, and the one shoe he was wearing was the mate to a shoe recovered from the motel room. According to the testimony at trial, the three victims, who were friends, had planned to meet four Mexican men at the motel that night for a sexual encounter.

{4} On March 3, 1997, four Mexican nationals were arrested in Salina, Kansas, driving a 1987 Ford Taurus that had belonged to one of the victims. The four men were Defendant, Ricardo Martinez–Rodriguez, Ricar-do Martinez–Silva, and Rene Hernandez–Hernandez. The Kansas authorities contacted the police in Albuquerque, and a team of officers went to Kansas to interview the four men. Before being interviewed by the officers, Defendant was advised of his *Miranda* rights and signed a waiver of rights form. During the interview, he denied having been in Albuquerque and said that the four men bought the car in Denver where they had been doing cleaning jobs.

{5} The Kansas authorities kept the four co-defendants[1] separated. On the second day of custody, jail officials found a note, signed by Defendant, concealed in a pair of shoes belonging to one of the co-defendants. In the note, Defendant told the others that they had to develop a consistent cover story for their activities, acknowledged that they may be facing some time in prison, and also stated that "all 4 of us are equally guilty[,] no one more and no one less."

{6} While the four men were in custody in Kansas, one of the co-defendants talked to another prisoner, Efraim Porras, who was in jail on a federal drug charge. On March 3, 1997, this co-defendant told Porras that he and the others were in jail for having killed two people in Albuquerque. He also disclosed to Porras that there were actually three victims; the third had been thrown into the snow and had yet to be found. The co-defendant also told him that the three victims had been strangled to death. Porras told his attorney about the conversation who reported it to the authorities.

{7} Testimony at trial by the investigating officers revealed that Defendant's palm print was on the wall of the motel room. Two pairs of blood-stained canvas gloves were found in the bathroom. The forensic scientist who conducted a DNA analysis on the gloves testified that the blood of the owner of the car was on the outside of all four gloves. The victim who owned the car also suffered blunt trauma from injuries to the head and neck. The results of DNA testing of the inside of one of the gloves did not exclude

---

**1.** For ease of reference, the opinion calls the four men charged in this case "co-defendants," even though they were tried separately.

Defendant as a donor. The DNA evidence developed from the semen found on the anal swabs taken from the body of the third victim matched that of one of the co-defendants. A friend of Defendant's, Karmen Grover, testified that Defendant had been accompanied by three other Hispanic men when they visited her in Salt Lake City late in the evening of February 25, 1997. She also stated that the car they were driving had New Mexico license plates.

{8} Defendant admitted at trial that he was present at the motel room with the victims on the night of the murder. Defendant testified that when he left the motel room the three victims were still alive, and that he had no role in their deaths, in hiding evidence, or in stealing the car. Although he had been in the car, he testified that he was unaware that the body of the third victim had been thrown from the car north of Santa Fe. He explained that the statement in his note about all of them being equally guilty referred to some petty thievery the group had engaged in during their travels. After a jury trial, Defendant was convicted of all charges.

## II. DISCUSSION

### A. Overcharging and Double Jeopardy.

#### 1. First Degree Murder.

{9} Defendant asserts that overcharging of offenses led the trial court to err when it accepted verdicts that resulted in multiple convictions for overlapping or contradictory charges. Under this claim, Defendant challenges his convictions for first degree murder, armed robbery, conspiracy, tampering with evidence, unlawful taking of a motor vehicle, and receiving a stolen vehicle.

■ {10} The State tried Defendant for first degree murder under two theories of first degree murder: murder by deliberate killing and murder in the commission of a felony. Jury instructions were given on the alternative bases for the first degree murder charge for each of the three victims. Instead of a general verdict form for first degree murder for each victim, separate verdict forms were given for each alternative. The jury found Defendant guilty of both alternatives for each count. Defendant claims that his convictions under both theories of first degree murder resulted from ambiguous jury instructions because the jury was not told that it could not convict him for both deliberate murder and felony murder. This failure, he contends, resulted in contradictory convictions, violating principles of due process and double jeopardy under the federal and state [2] constitutions.

{11} We disagree with Defendant's claims for several reasons. We first note that, contrary to Defendant's assertions, the jury was instructed in the alternative on both theories of first degree murder. For example, in the jury instruction for the first victim, the instructions for felony murder included the following language: "For you to find the defendant Valentin Reyes guilty of Felony Murder, which is First Degree Murder, as charged in the alternative to Count I . . . ." Count I was the charge of first degree murder by deliberate killing. This language was repeated in each of the felony murder instructions for the other two victims.

{12} The jury was instructed on the elements of deliberate intent murder for each of the victims in accordance with UJI 14–201 NMRA 2002, as follows:

For you to find the defendant guilty of First Degree Murder by a deliberate killing as charged in Count I, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. The defendant killed [the victim];

2. This killing was with the deliberate intention to take away the life of [the victim];

3. This happened in New Mexico on or about the 25th day of February, 1997.

---

2. Although Defendant refers to the New Mexico Constitution, he does not argue that our state constitution should be interpreted more broadly than the federal in terms of either his due process or double jeopardy claim. *See State v. Go-* *mez,* 1997–NMSC–006, ¶¶ 22–23, 122 N.M. 777, 932 P.2d 1 (describing preservation requirements for a state constitutional claim). We therefore do not consider this claim.

{13} The elements of the felony murder theory of first degree murder are contained in UJI 14–202 NMRA 2002. The jury was instructed on those elements as follows:

> For you to find the defendant Valentin Reyes guilty of Felony Murder, which is First Degree Murder, as charged in the alternative to Count I, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. The defendant Valentin Reyes committed the crime of Kidnapping and/or False Imprisonment and/or Armed Robbery;
>
> 2. Valentin Reyes caused the death of [the victim] during the commission of Kidnapping and/or False Imprisonment and/or Armed Robbery;
>
> 3. Valentin Reyes intended to kill or knew that his acts created a strong probability of death or great bodily harm;
>
> 4. This happened in New Mexico on or about the 25th day of February, 1997.

{14} Although Defendant contends that a guilty verdict for both of these crimes was potentially contradictory, he does not explain this claim further or cite any authority in support of it. We are not persuaded by Defendant's assertions. On their face, the crimes of deliberate intent murder and felony murder are not inherently contradictory. In this case, the two crimes are not factually contradictory. As the State points out, and Defendant acknowledges, the jury could have concluded that Defendant was guilty under each alternative.

■ {15} Substantial evidence was presented on both theories of first degree murder. As to the deliberate intent theory of first degree murder, the jury heard evidence that each of the victims was bound hand and foot and each had been strangled with a ligature. The pathologist testified that it takes several minutes of sustained pressure to kill someone by strangulation. This testimony provided sufficient evidence for the jury to conclude that Defendant acted with the deliberate intention to kill. *See State v. Rojo,* 1999–NMSC–001, ¶ 24, 126 N.M. 438, 971 P.2d 829 (holding that evidence of the

method used to kill the victim, strangulation by ligature, when combined with circumstantial evidence and reasonable inferences arising from the surrounding circumstances, was sufficient to prove the requisite intent to kill).

■ {16} For the second theory of first degree murder, felony murder, the jury was instructed that to convict Defendant of felony murder they must find that he committed the crimes of kidnapping, and/or false imprisonment, and/or armed robbery and that Defendant caused the death of the victims during the commission of one of those crimes. The jury heard testimony that all three victims were bound hand and foot. A rational jury could reasonably have determined that Defendant committed the crime of false imprisonment by confining the victims against their will without authority to do so. *See State v. Muise,* 103 N.M. 382, 388, 707 P.2d 1192, 1198 (Ct.App.1985) ("The restraint constituting false imprisonment may arise out of words, acts, gestures or similar means which result in a reasonable fear of personal difficulty or personal injuries if the victim does not submit."). The jury could have found that the third victim was kidnapped when he was restrained by being gagged and bound hand and foot, or when he was carried away from Albuquerque in the stolen car, or when he was used sexually by one of the co-defendants. *See State v. Pisio,* 119 N.M. 252, 260, 889 P.2d 860, 868 (Ct.App.1994) (holding that conduct for kidnapping began at the point in which the victim's physical association with the defendant was no longer voluntary). In *State v. McGuire,* 110 N.M. 304, 309, 795 P.2d 996, 1001 (1990), this Court concluded that once the defendant had confined the victim with the requisite intent to hold the victim for service against the victim's will, "he had committed the crime of kidnapping, although the kidnapping continued throughout the course of defendant's other crimes and until the time of the victim's death." When the four men were arrested in Kansas, Defendant was driving the car belonging to one of the victims. From the trial testimony, the jury could have reasonably determined that an armed robbery occurred in that the car was taken by force or violence using an

instrument that could cause death or very serious injury.

{17} In *State v. Salazar*, 1997–NMSC–044, 123 N.M. 778, 945 P.2d 996, this Court dealt with an analogous due process question. The defendant in that case challenged his conviction on a general verdict of first degree murder which had been based on the alternative theories of murder by deliberate killing and depraved mind murder. *Id.* ¶ 33. He contended that the jury not only had to be unanimous in its verdict of guilty, but also unanimous in convicting on one of the alternative theories. *Id.* In rejecting that argument, we held that "a jury's general verdict will not be disturbed in such a case where substantial evidence exists in the record supporting at least one of the theories of the crime presented to the jury." *Id.* ¶ 32; *accord State v. Olguin*, 120 N.M. 740, 741, 906 P.2d 731, 732 (1995) (holding that due process does not require a general verdict of guilt to be set aside if one of the two alternative bases for conviction is supported by sufficient evidence). In this case, substantial evidence was presented at trial to support convictions under either theory of first degree murder; all elements of the crime were proved.

{18} As to Defendant's double jeopardy claims, although we typically address these claims for multiple punishments under the analysis set forth in *Swafford v. State*, 112 N.M. 3, 13–14, 810 P.2d 1223, 1233–34 (1991), in this case we apply the established principle articulated in *State v. Santillanes*, 2001–NMSC–018, ¶ 5, 130 N.M. 464, 27 P.3d 456 for multiple homicide convictions arising out of the death of a single victim. Generally, "one death should result in only one homicide conviction." *Santillanes*, 2001–NMSC–018, ¶ 5, 130 N.M. 464, 27 P.3d 456 (internal quotation marks and quoted authority omitted). Thus, we agree with Defendant that under our case law there cannot be six guilty verdicts for three deaths. The trial court dealt with the multiple verdicts by running each felony murder conviction concurrently with the corresponding deliberate murder conviction and then running each of the deliberate murder convictions consecutively. However, we determine that the proper way to resolve the sentencing issues is to regard the guilty verdicts as a general verdict of guilt for first degree murder based on two alternative theories. We remand for the trial court to enter an amended judgment, sentence, and commitment order reflecting a general verdict of first degree murder.

### 2. Additional Claims of Overcharging.

{19} Defendant also contends that his convictions for armed robbery, three counts of conspiracy, and three counts of tampering with evidence resulted from overcharging by the prosecutor and thus violated double jeopardy. First, we address Defendant's contention that his convictions for both felony murder and armed robbery violate double jeopardy principles. We reject this argument. The evidence in this case supports an inference that the force Defendant and his co-defendants used to commit armed robbery and the force they used to kill the owner of the car were distinct. *See State v. Cooper*, 1997–NMSC–058, ¶ 59, 124 N.M. 277, 949 P.2d 660 (describing indicia of distinctness, which include separation between the illegal acts in time or distance, the nature of the acts, the objectives and results of the acts, intervening events, and the behavior of the defendant between acts). The State introduced evidence that the defendants inflicted blunt head and neck trauma with a closet rod to the owner of the car but did not do so to the other victims, supporting an inference that this beating was to obtain the vehicle. The evidence also demonstrates that the defendants strangled to death the car owner as well as the second victim in the motel room, supporting the inference that the car owner's killing was separate in both time and objective from the force used to commit the robbery. *See State v. Barrera*, 2001–NMSC–014, ¶ 36, 130 N.M. 227, 22 P.3d 1177 (holding that the defendant's different intentions and objectives, to silence the victim and to steal her vehicle, provided adequate indicia of distinctness and rejecting the double jeopardy claim).

{20} With respect to the conspiracy charges, we conclude that there was suffi-

cient evidence of separate conspiracies to support Defendant's convictions. "Where there is one agreement to commit two or more criminal acts, the perpetrators are guilty of a single conspiracy." *State v. Sanders*, 117 N.M. 452, 457, 872 P.2d 870, 875 (1994). However, "the number of agreements to break the law determines the number of criminal conspiracies subject to prosecution." *Id.* This Court reviews this issue "under the sufficiency-of-evidence standard." *Id.* "This standard requires us to view the evidence in the light most favorable to the State, resolving all conflicts and indulging all reasonable inferences in support of the jury's verdict." *State v. Tisthammer*, 1998–NMCA–115, ¶ 27, 126 N.M. 52, 966 P.2d 760 (relying on *Sanders*, 117 N.M. at 456, 872 P.2d at 874). "Generally, the agreement is a matter of inference from the facts and circumstances." *Id.* (quotation marks and quoted authority omitted); *accord Sanders*, 117 N.M. at 458, 872 P.2d at 876.

■ {21} We conclude that the State presented sufficient evidence of a conspiracy to commit armed robbery. The State presented evidence that the defendants did not possess a vehicle but wished to leave New Mexico. Defendant and his co-defendants were apprehended with the stolen car outside of the State. Witnesses testified that the victims had joined the defendants at the motel in anticipation of a sexual encounter. The State presented testimony that there were three victims, including two men who weighed close to two hundred pounds, and four perpetrators, who were all, in relation to the victims, small men: each was five foot four or less in height and weighed one hundred and fifty pounds or less. The defendants bound the victims. Based on the fact that the defendants were able to restrain the victims, the jury could reasonably infer from the number and size of the victims that the defendants had a preexisting plan to overtake the victims. As discussed above, the State presented evidence that the owner of the car suffered extensive head and neck trauma, caused by the closet rod, which differed from the injuries to the other two victims. The evidence of bloody fluid in his lungs also indicates that the car owner had his head held underneath water in the bath-

tub. The jury could infer from this evidence of a specific assault upon the car owner with the closet rod that the defendants' preexisting plan consisted of luring the victims to the motel in order to commit armed robbery for the purpose of obtaining a vehicle to leave New Mexico.

■ {22} With respect to the conspiracy to commit murder, the State presented evidence that, after the beating, the car owner was strangled to death in the motel room as was the second victim. The pathologist testified that this manner of killing takes several minutes of pressure to accomplish the murder. Additionally, the State presented evidence that the defendants concealed one victim's wallet in a plumbing access panel under the bathroom fixtures, as well as another victim's identification card under the television set. The defendants also hid two of the victims under the beds in the motel room. From this evidence, the jury could reasonably infer that the defendants, having inflicted severe, life threatening injuries with the closet rod upon the car owner during the commission of the armed robbery, then agreed to silence the victims and attempt to cover up their crimes.

■ {23} Finally, with respect to the conspiracy to commit kidnapping, the State presented evidence that Defendant and the others bound and gagged the third victim, wrapped him in a bedspread, placed him in the car, and transported him out of Albuquerque. A co-defendant's semen was found in this victim's anus. Based on this evidence, the jury could reasonably infer that Defendant agreed to hold the victim to service, thus supporting the conspiracy to commit kidnapping conviction.

■ {24} Defendant contends that, at most, only one continuous conspiratorial agreement existed, relying upon *State v. Jackson*, 116 N.M. 130, 134, 860 P.2d 772, 776 (Ct.App.1993). We disagree. In *Jackson*, the defendant and his accomplice agreed to find someone to rob and the Court of Appeals concluded that this agreement supported only one conspiracy despite the fact that the defendant and his accomplice even-

tually robbed and murdered two victims who were together. *Id.* The Court of Appeals held that the inference was that the original conspiracy matured and expanded to include the additional objective of robbing two victims rather than one. *Id.* In the present case, we are not faced with three conspiracy charges of one crime committed against three victims; rather, Defendant entered into three agreements for five acts for different victims: one armed robbery, three murders, and one kidnapping. The defendants agreed to commit armed robbery against the victim who owned the car they wished to take. They agreed to kidnap the third victim. Finally, Defendant and his accomplices agreed to kill all three victims. "[M]ultiple agreements to commit separate crimes constitute multiple conspiracies." *United States v. Broce,* 488 U.S. 563, 571, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989). In *Sanders,* this Court affirmed the defendant's convictions for first degree murder, tampering with evidence, attempted fraud, and fraud, as well as four conspiracy convictions to commit these crimes. *Sanders,* 117 N.M. at 454, 872 P.2d at 872. Based upon the facts, circumstances, and inferences of the case, we rejected the defendant's argument that there was no evidence of more than one conspiracy because there was only one motive, and we concluded that the defendant and his accomplice entered into separate conspiracies. *Id.* at 457, 872 P.2d at 875. "Clearly, if the defendant commits two discrete acts violative of the same statutory offense, but separated by sufficient indicia of distinctness, then a court may impose separate, consecutive punishments for each offense." *Swafford,* 112 N.M. at 13, 810 P.2d at 1233. Similarly, we believe that the inferences reasonably drawn from the evidence in this case support three conspiracies.

{25} Based on the differing treatment of the three victims and the distinct timing of the various crimes, we conclude that the State presented sufficient evidence to support separate agreements between Defendant and his co-defendants to commit armed robbery, the three murders, and the kidnapping. *See State v. Ketchum,* 45 Conn.App. 270, 696 A.2d 987, 991–92 (1997) (holding that jury could reasonably find that there were two separate conspiracies when group of attackers decided, while assaulting the victim, to then rob him). These three separate agreements support the three separate convictions of conspiracy beyond a reasonable doubt. Similarly, with regard to the three convictions for tampering with evidence, those convictions are supported by evidence of three separate acts presented at trial.

■ {26} We reach a different conclusion, however, with regard to the convictions for unlawful taking of a vehicle, contrary to Section 66–3–504, and receiving a stolen vehicle, contrary to Section 66–3–505. Defendant argues that under the facts of this case Defendant cannot be convicted of both crimes. We agree. *See State v. Stephens,* 110 N.M. 525, 526, 797 P.2d 314, 315 (Ct.App.1990) (deciding that, under the facts of the case, "one who steals property cannot be convicted of receiving or retaining the same property"). For this reason, we reverse Defendant's conviction for receiving a stolen vehicle. This decision does not affect the length of Defendant's sentence because the trial court ordered the eighteen month sentence for this conviction to be served concurrently with the sentences for armed robbery and unlawful taking of a motor vehicle.

## B. Admission of Evidence.

■ {27} Defendant challenges several of the trial court's evidentiary rulings regarding statements made by the co-defendants, including those made to the police and to a fellow inmate. Defendant also claims that the trial court erred in admitting a note he had written while in custody. The admission of evidence is entrusted to the discretion of the trial court and will not be disturbed on appeal absent a showing of abuse of that discretion and that the error in the admission of evidence was prejudicial. *See State v. Jett,* 111 N.M. 309, 312, 805 P.2d 78, 81 (1991).

### 1. Statements of the Co-defendants.

■ {28} Defendant contends that the trial court erred when it permitted the introduction of the custodial interviews given by the four defendants to the Albuquerque po-

lice in Kansas. In the statements the four gave to the police, they all denied any involvement in the murders and gave an innocent explanation for how they came to be in possession of the car of one of the murder victims. At trial, the State offered the statements to show that the co-defendants were engaged in a conspiracy to cover up their responsibility for these crimes, and they were admitted on that basis. The jury was given a limiting instruction when the statements were first introduced, and then later during jury instructions, that the statements were being admitted for "the limited purpose of attempting to prove that a conspiracy existed" among Defendant and the co-defendants.

{29} On appeal, Defendant asserts that these statements were inadmissible hearsay. A hearsay statement is an out-of-court oral or written assertion offered to prove the truth of the matter asserted therein, Rule 11–801(A), (C) NMRA 2002, and is inadmissible absent an exception under the rules of evidence, Rule 11–802 NMRA 2002. However, if an out-of-court statement is offered in evidence merely for the purpose of establishing what was said at the time, and not for the truth of the matter, the testimony is not hearsay. Rule 11–801; *accord* 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 801.11[1], at 801–11 (Joseph M. McLaughlin ed., 2d ed. 2002) ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted.") (quoting Fed.R.Crim.P. 801 advisory committee's note).

{30} The trial court did not abuse its discretion in admitting the statements by the four co-defendants. The statements were not admitted into evidence to prove the truth of anything said by the co-defendants, but rather to show the opposite-that the statements were untrue. *See Anderson v. United States*, 417 U.S. 211, 220, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974) ("[T]he point of the prosecutor's introducing those statements was simply to prove that the statements were made so as to establish a foundation for later showing, through other admissible evidence, that they were false."); *State v. Lujan*, 103 N.M. 667, 674, 712 P.2d 13, 20 (Ct.App.1985) (concluding that an attempt to deceive police shows a consciousness of guilt).

**2. Statement of Defendant.**

 {31} While the four defendants were in custody in Kansas, jail officials found a message, hand written in Spanish, concealed in a pair of shoes belonging to co-defendant Martinez–Silva. The note was signed by Defendant. A handwriting examiner testified that the note had been written by Defendant, and Defendant acknowledged in his testimony that he had written the note. The note advised the others as follows (the comments in brackets were added by the certified judicial interpreter) (emphasis omitted):

whenever you want to write to Mexico[,] write to Carmen and there [that way] you send a letter to your mother—have Carmen send it—to Mexico for you. Deny everything[,] I also denied everything[.] They are trying to tell us lies[,] that they have photos of us in Albuquerque—just say that you were never there. Just for about 3 hours in Solei Siry Yuta [Salt Lake City, Utah] and we worked in Denver cleaning homes and gardens[,] to see what happens[.] Throw this paper when [after] you read it. ATT. [Spanish abbreviation for Atentatmente = Yours truly] Valentin Qz VR [sic] [in smaller letters]

[. . . .]

what they found is the blood of their shirts[.] I think we are going to be inside a few years since we all said different—things[,] but all 4 of us are equally guilty[,] no one more and no one less. I'll be seeing you.

{32} Defendant filed a pretrial motion to suppress the note on the basis that, as a Mexican national, he should have been advised upon his arrest that he could confer with the Mexican consul as provided by the Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 216 (VCCR). In denying the motion, the trial court assumed for the sake of argument that the VCCR applied and also that it had not been complied with but held that the appropriate remedy would not be to suppress evi-

dence. An appellate court reviews rulings on a motion to suppress to determine whether the law was correctly applied to the facts, reviewing them in the light most favorable to the prevailing party and drawing all reasonable inferences to support the decision below. *State v. Salgado*, 1999–NMSC–008, ¶ 16, 126 N.M. 691, 974 P.2d 661.

{33} This Court has recently resolved the question of claims raised under the VCCR contrary to Defendant's position. *State v. Martinez–Rodriguez*, 2001–NMSC–029, ¶¶ 15–19, 131 N.M. 47, 33 P.3d 267, *cert. denied*, —— U.S. ——, 122 S.Ct. 1317, 152 L.Ed.2d 225 (2002). In this case, before Defendant gave the challenged statement, he had been advised of his *Miranda* rights and signed a waiver of those rights. We conclude that Defendant's statement was admissible under Rule 11–801(D)(2)(a) as an admission by a party-opponent. We hold that the trial court did not abuse its discretion in denying Defendant's motion to suppress.

### 3. Testimony of Efraim Porras.

{34} Defendant asserts that the trial court erred when it admitted an out-of-court statement of co-defendant Martinez–Rodriguez as a statement against penal interest through the testimony of Porras. *See* Rule 11–804(B)(3) NMRA 2002. The trial court ruled in a pretrial hearing that the statement was admissible. The court found that the statement was significantly against Martinez–Rodriguez's penal interest, in that he did not attempt to shift responsibility to others but rather implicated himself in the murders to a greater degree, and he was not talking to the authorities in an attempt to get favorable treatment.

{35} On appeal, Defendant claims that the statement did not qualify as a statement against interest and that its admission violated his confrontation rights under the Sixth Amendment. U.S. Const. amend. VI. "As a general matter, we review a trial court's admission of evidence under an exception to the hearsay rule only for an abuse of discretion." *State v. Torres*, 1998–NMSC–052, ¶ 15, 126 N.M. 477, 971 P.2d 1267; *accord State v. Benavidez*, 1999–NMSC–041, ¶ 2, 128 N.M. 261, 992 P.2d 274; *State v.*

*Gonzales*, 1999–NMSC–033, ¶ 5, 128 N.M. 44, 989 P.2d 419, *cert. denied*, 529 U.S. 1025, 120 S.Ct. 1434, 146 L.Ed.2d 323 (2000).

{36} Rule 11–804 defines exceptions to the hearsay rule that apply when the declarant is unavailable as a witness; one of the exceptions is a statement against interest which is defined as follows:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

Rule 11–804(B)(3). This type of statement is admissible as an exception to the hearsay rule "because it is presumed that one will not make a statement damaging to one's self unless it is true." Weinstein & Berger, *supra*, § 804.06[1], at 804–47. A reviewing court must decide whether the trial court abused its discretion in making the determination that a statement so far tended to subject a person to criminal liability, rather than to relieve him or her of it, that a reasonable person in the declarant's position would not have made the statement unless he or she believed it to be true. *Torres*, 1998–NMSC–052, ¶ 16, 126 N.M. 477, 971 P.2d 1267.

{37} In this case, Defendant does not challenge the unavailability of declarant Martinez–Rodriguez, *see* Rule 11–804(A), but rather the trial court's determination that the statement was against penal interest. As we understand Defendant's claim, he is maintaining that the statement is not against Martinez–Rodriguez's penal interest because he is not accepting responsibility, but rather trying to shift responsibility to the other defendants. He asserts that Defendant's having included the three others in his statement is an attempt to shift blame. Porras testified that when he first met Martinez–Rodriguez in the Salina jail, Martinez–Rodriguez told Porras that he and some others had killed three men by strangling them, one of whom had not yet been found by the

authorities. Porras testified that Martinez–Rodriguez repeated the story when they next encountered each other.

{38} We agree with the trial court that the statement equally incriminates Martinez–Rodriguez and the other defendants in the murders, rather than minimizing his culpability by shifting responsibility to them. "[S]tatements that demonstrate a declarant's inside knowledge of a crime are also against the declarant's penal interest." *United States v. Westmoreland,* 240 F.3d 618, 627 (7th Cir.2001) (quoted authority and quotation marks omitted) (alteration in original). Moreover, after having been questioned by the police, Martinez–Rodriguez knew that he was a suspect in the murders when he made the statement implicating himself in these crimes. It was clearly against his penal interest, and he did not attempt to shift responsibility away from himself to the other three defendants. Because we do not think that a reasonable person would falsely admit his involvement in such serious crimes, we hold that the statement fell within the penal interest exception to the hearsay rule and the trial court did not abuse its discretion in admitting the statement.

{39} We review de novo the question of whether the Confrontation Clause has been violated by the admission of hearsay evidence. *Gonzales,* 1999–NMSC–033, ¶ 16, 128 N.M. 44, 989 P.2d 419. In general, there is no Confrontation Clause problem in admitting a hearsay statement if the declarant is unavailable and the statement bears adequate indicia of trustworthiness. *Id.* ¶ 17. The requisite indicia of trustworthiness may be found either by determining that the hearsay exception is a firmly rooted one or that the circumstance surrounding the making of the statement "bears adequate indicia of reliability." *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *see Westmoreland,* 240 F.3d at 628 (recognizing that "jailhouse confessions to cellmates are also trustworthy and admissible under Rule 804(b)(3)"). This Court previously has held that the penal interest exception to the hearsay rule is "a firmly rooted hearsay exception for purposes of satisfying the indicia of reliability requirement of the Confrontation Clause." *Torres,* 1998–NMSC–052, ¶ 32, 126 N.M. 477, 971 P.2d 1267; *accord State v. Toney,* 2002–NMSC–003, ¶¶ 10–11, 131 N.M. 558, 40 P.3d 1002; *Martinez–Rodriguez,* 2001–NMSC–029, ¶ 27, 131 N.M. 47, 33 P.3d 267; *Gonzales,* 1999–NMSC–033, ¶ 19, 128 N.M. 44, 989 P.2d 419. A hearsay statement that satisfies the penal interest exception under Rule 11–804(B)(3) will generally also satisfy the requirement of the Confrontation Clause because the issue of trustworthiness has already been resolved in favor of admissibility.

{40} Defendant relies on the plurality opinion in *Lilly v. Virginia,* 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999). However, as we have previously stated, "the firmly rooted exception discussion in *Lilly* was contained in a plurality opinion, and thus is not binding on this Court." *Toney,* 2002–NMSC–003, ¶ 11, 131 N.M. 558, 40 P.3d 1002. More importantly, we declined to follow a similar argument in the motion for rehearing in *Gonzales* because, under our case law, the challenged statement in *Lilly* would not have survived a Rule 11–804(B)(3) analysis. *Gonzales,* 1999–NMSC–033, ¶¶ 36–37, 128 N.M. 44, 989 P.2d 419; *accord Toney,* 2002–NMSC–003, ¶¶ 10–11, 131 N.M. 558, 40 P.3d 1002; *Martinez–Rodriguez,* 2001–NMSC–029, ¶ 27, 131 N.M. 47, 33 P.3d 267. We are unpersuaded by Defendant's argument and reaffirm that, in New Mexico, a statement against penal interest within the meaning of Rule 11–804(B)(3) is a firmly rooted exception to the hearsay rule. The trial court did not err in admitting the statement of Martinez–Rodriguez into evidence as a statement against penal interest and permitting Porras to testify about that statement.

## C. Remaining Claims by Defendant.

### 1. Kidnapping Jury Instruction

{41} Defendant also challenges the jury instruction for kidnapping. He raises this argument for the first time on appeal. Because he did not object to the instruction at trial or tender an instruction, the claim of error has not been preserved. *See State v. Varela,* 1999–NMSC–045, ¶¶ 25–26, 128 N.M. 454, 993 P.2d 1280 (holding that to preserve

an issue for appeal, it is essential that a party make a timely objection that specifically apprises the trial court of the claimed error and invokes an intelligent ruling thereon). We require a party to object at trial and invoke a ruling from the trial court in order to "alert the trial court to a claim of error so that it has an opportunity to correct any mistake," *Gomez*, 1997–NMSC–006, ¶ 29, 122 N.M. 777, 932 P.2d 1, and to provide an adequate record for the appellate court, *State v. Lucero*, 116 N.M. 450, 453, 863 P.2d 1071, 1074 (1993). Under our rules of criminal procedure and appellate procedure, objections to instructions cannot be raised for the first time on appeal. *See* Rule 5–608(D) NMRA 2002 (requiring counsel to tender a correct written instruction to preserve claim of failing to instruct on any issue); Rule 12–216 NMRA 2002 (describing preservation requirements for appellate review). However, this Court may exercise its discretion to review for fundamental error under Rule 12–216(B).

{42} The doctrine of fundamental error should be applied sparingly, to prevent a miscarriage of justice, and not to excuse the failure to make proper objections in the court below. With regard to a criminal conviction, the doctrine is resorted to only if the defendant's innocence appears indisputable or if the question of his [or her] guilt is so doubtful that it would shock the conscience to permit the conviction to stand.

*State v. Clark*, 108 N.M. 288, 301, 772 P.2d 322, 335 (1989) (citation omitted), *overruled on other grounds by State v. Henderson*, 109 N.M. 655, 789 P.2d 603 (1990), *overruled on other grounds by Clark v. Tansy*, 118 N.M. 486, 882 P.2d 527 (1994). "If there is substantial evidence ... to support the verdict of the jury, we will not resort to fundamental error." *State v. Rodriguez*, 81 N.M. 503, 505, 469 P.2d 148, 150 (1970). Defendant has not established fundamental error: he has not demonstrated how the challenged jury instruction resulted in a miscarriage of justice by putting the question of his guilt in doubt.

## 2. Sufficiency of the Evidence.

{43} On appeal, Defendant has challenged the sufficiency of the evidence for all of his convictions. "[T]he test to determine the sufficiency of evidence in New Mexico ... is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988) (relying on *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)); *accord Sanders*, 117 N.M. at 456, 872 P.2d at 874. "A reviewing court must view the evidence in the light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict." *Sutphin*, 107 N.M. at 131, 753 P.2d at 1319. "This court does not weigh the evidence and may not substitute its judgment for that of the fact finder so long as there is sufficient evidence to support the verdict." *Id.* In support of this claim, Defendant contends that the prosecution presented no evidence to disprove his testimony that he left the motel room when the victims were still alive. Defendant misapprehends the burden on the State at trial and the nature of appellate review for sufficiency of evidence. "An appellate court does not evaluate the evidence to determine whether some hypothesis could be designed which is consistent with a finding of innocence." *Sutphin*, 107 N.M. at 130–31, 753 P.2d at 1318–19; *accord State v. Sosa*, 2000–NMSC–036, ¶ 8, 129 N.M. 767, 14 P.3d 32. "The jury heard evidence regarding the Defendant's version of the facts and was free to reject that testimony." *Salazar*, 1997–NMSC–044, ¶ 46, 123 N.M. 778, 945 P.2d 996.

{44} After a thorough examination of the evidence presented at trial and the applicable law, we have determined that Defendant's claims are without merit. We conclude that there was sufficient evidence to support Defendant's convictions for three counts of first degree murder, conspiracy to commit murder, kidnapping, conspiracy to commit kidnapping, two counts of false imprisonment, armed robbery, conspiracy to commit armed

robbery, unlawful taking of a motor vehicle, and three counts of tampering with evidence.

### 3. Ineffective Assistance of Counsel.

■ {45} On appeal, Defendant contends that his counsel provided ineffective assistance in preparing for the trial and at trial. Following his conviction, Defendant had filed a pro se motion with the trial court alleging ineffective assistance of counsel. In his motion, Defendant raised several claims of ineffective assistance including that his attorney failed to offer DNA studies as evidence; failed to summon a co-defendant, Ricardo Martinez–Rodriguez, to testify; failed to object to part of the prosecutor's closing argument; failed to meet or speak more often with Defendant for trial preparation; and failed to investigate adequately Defendant's claim that Defendant had been detained by the Immigration and Naturalization Service on a day that a witness had reported seeing him in Albuquerque. The trial court conducted an evidentiary hearing during which it reviewed each of these claims.

■ {46} A defendant has a right to effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution. To establish a claim of ineffective assistance of counsel, a defendant must show that his or her attorney failed to exercise the skill of a reasonably competent attorney and that the defendant was prejudiced by the failure. *Lytle v. Jordan*, 2001–NMSC–016, ¶ 25, 130 N.M. 198, 22 P.3d 666 (relying upon the test from *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)); *accord Williams v. Taylor*, 529 U.S. 362, 391, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (reaffirming that the test from *Strickland* is to be used for resolving virtually all claims of ineffective assistance of counsel). There is a strong presumption of effective assistance of counsel. *Lytle*, 2001–NMSC–016, ¶ 50, 130 N.M. 198, 22 P.3d 666. A defendant must show the prejudice he or she suffered as a result of the alleged incompetence, and that prejudice must be of sufficient magnitude to call into question the reliability of the trial results. *Duncan v. Kerby*, 115 N.M. 344, 348, 851 P.2d 466, 470 (1993). To determine

whether there was prejudice, a reviewing court must consider the totality of evidence presented. *State v. Price*, 104 N.M. 703, 709, 726 P.2d 857, 863 (Ct.App.1986). "A claim of ineffective assistance of counsel does not present an opportunity for hindsight review." *Lytle*, 2001–NMSC–016, ¶ 50, 130 N.M. 198, 22 P.3d 666; *State v. Hester*, 1999–NMSC–020, ¶ 16, 127 N.M. 218, 979 P.2d 729 ("The mere fact that the defense was not successful does not equate to a finding of ineffective assistance of counsel.").

{47} The trial court determined that the first claim about the DNA testing did not raise a significant issue. As to the second issue, evidence was presented that the attorney for the co-defendant Martinez–Rodriguez indicated that because his case was on appeal he would not honor the subpoena. The trial court concluded that Martinez–Rodriguez was unavailable and therefore could not have been produced by Defendant's attorney. The trial court determined that Defendant's claim regarding the closing argument mischaracterized what the prosecutor had said. As to the claim of ineffective preparation, the trial court observed that the trial attorney had been "fully prepared and fully aware of the evidence against Mr. Reyes." The trial court was unable to fully resolve the final claim because Defendant did not waive attorney-client privilege for the trial court to determine whether Defendant had, in fact, told his attorney about the alleged detention by INS. Having reviewed all of Defendant's claims, the trial court denied the motion based on what it had observed of Defendant's attorney at trial and in the light of all the evidence presented at trial.

■ {48} Defendant has failed to show that his trial attorney failed to exercise the skill, judgment, and diligence of a reasonably competent attorney in defending him. *State v. Gonzales*, 113 N.M. 221, 229–30, 824 P.2d 1023, 1031–32 (1992). Furthermore, Defendant has offered no evidence to show prejudice—that but for the alleged deficiencies of the attorney, there was a reasonable probability that the outcome of the trial would have been different. The evidence against Defendant was overwhelming. The Supreme Court stated in *Strickland:*

Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052. Failure to prove either prong of the test defeats a claim of ineffective assistance of counsel. *See State v. Baca*, 1997–NMSC–045, ¶ 21, 124 N.M. 55, 946 P.2d 1066. Defendant having proved neither, we reject his claim of ineffective assistance of counsel.

### 4. Remaining Claims of Error.

{49} Defendant claims that the trial court erred when it twice excluded evidence that Defendant wanted to use for impeachment purposes. In each instance the trial court found that the proffered evidence was only marginally relevant and that any probative value was substantially outweighed by a danger of unfair prejudice and confusion of the issues. *See* Rule 11–403 NMRA 2002. Defendant also challenges the qualifications of one of the jurors. Defendant raises these claims pursuant to *State v. Franklin*, 78 N.M. 127, 129, 428 P.2d 982, 984 (1967) (advising appellate counsel to advance a defendant's arguments even if their merits are questionable) and *State v. Boyer*, 103 N.M. 655, 659, 712 P.2d 1, 5 (Ct.App.1985) (recognizing that an attorney should present a client's contentions even if counsel has no faith in them). We have considered Defendant's arguments on both issues. Finding them to be without merit, we do not discuss them.

## III. CONCLUSION

{50} We hold that Defendant's convictions for first degree murder do not implicate either due process or double jeopardy and that the jury's verdict was supported by substantial evidence. We conclude that the trial court acted within its discretion in admitting the statements of the defendants, the admissions of the Defendant, and the statement against penal interest by the co-defendant. No fundamental error occurred in instructing the jury about the kidnapping charges. Defendant did not receive ineffective assistance from his trial counsel. Under the facts of this case he cannot be convicted of receiving a stolen vehicle. We affirm all remaining convictions and remand for the entry of an amended order of judgment, sentence and commitment reflecting that Defendant is guilty of three counts of first degree murder based on two alternative theories and vacating the conviction for receiving a stolen vehicle.

{51} **IT IS SO ORDERED.**

WE CONCUR: PATRICIO M. SERNA, Chief Justice, JOSEPH F. BACA, PAMELA B. MINZNER, and PETRA JIMENEZ MAES, Justices.