This decision was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court and does not include the filing date.

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                             **No. 31,085**

**ROBERT GUERIN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Don Maddox, Presiding**

The Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant


Gary K. King, Attorney General
Max Shepherd, Assistant Attorney General
Albuquerque, NM

for Appellee


**DECISION**

**DANIELS, Justice.**

{1}     On the evening of March 10, 2006, five men, including Defendant Robert Guerin, Dominic Smith, Carl Morley, Joshua Hunter, and Trent Ashlock, were together in a car in Hobbs, New Mexico, for the stated purpose of obtaining methamphetamine, when three of the men were shot from within the vehicle. Morley and Hunter died at the scene. Ashlock suffered injuries but survived. Despite Defendant's testimony that Smith was solely responsible for the shootings, a jury convicted Defendant of two counts of first-degree murder, one count of attempt to commit first-degree murder, and one count of conspiracy to commit first-degree murder. Defendant was sentenced to two life imprisonment sentences plus nineteen years, followed by a minimum of five years parole. On appeal, Defendant argues that his convictions were not supported by substantial evidence, and that the trial court erred in denying his motion to grant immunity to Smith. Having reviewed this direct appeal from the district court pursuant to Article VI, Section 2 of the New Mexico Constitution, we reject Defendant's claims and affirm his convictions.

**I.     SUFFICIENCY OF THE EVIDENCE**

**A.     Standard of Review**

{2}     The test for sufficiency of the evidence "is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v.*

*Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). "In reviewing the sufficiency of evidence used to support a conviction, we resolve all disputed facts in favor of the State, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (filed 1998). The role of the appellate court is to scrutinize the evidence and supervise "the jury's fact-finding function to ensure that, indeed, a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction." *State v. Baca*, 1997-NMSC-059, ¶ 13, 124 N.M. 333, 950 P.2d 776. "Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject Defendant's version of the facts." *Rojo*, 1999-NMSC-001, ¶ 19.

**B.    The Evidence**

{3}    On March 15, 2006, the day before the shootings, Morley, Hunter, Ashlock, and Smith spent the evening together at Defendant's apartment, smoking methamphetamine and marijuana. The following morning, Morley, Hunter, and Ashlock asked Defendant and Smith if either of them could acquire methamphetamine for Morley to purchase. Defendant or Smith called Hunter's phone later that day to say that Defendant could get the drugs. The men arranged to meet at a Hastings store.

{4}     At Hastings, Defendant and Smith got into the vehicle driven by Ashlock. Ashlock was in the driver's seat, Hunter was in the front-passenger seat, Morley was in the left-rear seat, Defendant was in the middle-rear seat, and Smith was in the right-rear seat. Defendant directed Ashlock to drive to Sanger Elementary School. No one spoke during the drive.

{5}     As Ashlock pulled into a parking lot at the school, he heard several gun shots from within the vehicle and realized he had been injured. Ashlock noticed there was no movement from Morley or Hunter. Both men had received fatal gunshot wounds, Hunter to the back-left side of his head and Morley to his chest. Ashlock, Defendant, and Smith got out of the car. Ashlock testified that, as he faced Defendant and Smith outside the car, Defendant was waving the gun, swearing, and threatening him. As Smith stood next to Defendant, Defendant pointed the gun at Ashlock, cocked it, and tried to shoot, but the gun did not fire because it was jammed. As Defendant fumbled with the gun, Ashlock turned and ran to a nearby residence where he obtained help.

{6}     Defendant and Smith then fled the scene of the shootings together. They ran across a field at the elementary school, where they were seen by two witnesses, then ran down an alley. In the alley, Smith removed his bloody white-hooded sweatshirt, and placed it in a trash can. Defendant removed his tee-shirt and jeans and left them behind as they fled. Two baseball caps were later found in the alley with the

4

clothing. Defendant and Smith went back to Hastings and drove together to Smith's sister's house. Later that night, Smith's nephew drove Defendant and Smith to Albuquerque.

{7} The following day, March 11, 2006, Defendant called his ex-girlfriend Maria Martinez from a hotel in Albuquerque. Martinez picked up Defendant and drove him to her house, where Defendant told her, "I set these guys up, I got them to meet me, I got in the car with them and I pulled the trigger, but one of them got away." Defendant explained to Martinez that although he had killed two people, he wished he had killed the third man who had gotten away, because he was the one who had broken into Defendant's house and stolen money from him. Defendant also told Martinez where he hid the gun near the scene of the shootings. Approximately six weeks later, Martinez called police, told them Defendant was wanted for murder, and relayed the location of the gun. When detectives found the gun at the described location, it was still jammed with a bullet that would have prevented it from firing.

{8} Defendant testified at trial that it was Smith who shot Morley, Hunter, and Ashlock. According to Defendant, the first shot hit Hunter and the second shot hit Ashlock. Then, as Smith reached across Defendant in the backseat to shoot Morley, Defendant grabbed the gun, and it fired before Defendant gained control of it. Defendant stated that the gun jammed as he was grabbing it from Smith. Defendant

5

testified that he jumped out of the car with the gun, yelled at Ashlock and Smith in confusion, then ran away with Smith because he did not want to be found with two dead bodies and a gun in his hand, especially while high on methamphetamine.

{9}     In addition to testifying about his version of the events on the night of the shooting, Defendant explained his history of drug use and testified that he was high on methamphetamine when the shootings occurred.  Defendant told the jury that he began using methamphetamine at the age of eighteen.  Defendant and Smith had ingested large quantities of methamphetamine throughout the week preceding the shootings, during which time neither of them slept.  Defendant explained how methamphetamine prevents sleep and rational thought, creates paranoia, and can cause a user to misperceive events.  Defendant testified that, although he has known people who hallucinate when using methamphetamine, he himself had not been hallucinating the night of the shootings.

**C.     The Evidence Was Sufficient to Support Defendant's Convictions of First-Degree Murder and Attempted Murder.**

{10}     Defendant argues that his own testimony that he was not the shooter, along with gaps in the evidence presented by the State, would prevent a reasonable jury from finding him guilty of first-degree murder and attempted first-degree murder beyond a reasonable doubt.  However, "the jury was not obligated to believe Defendant's testimony, to disbelieve or discount conflicting testimony, or to adopt

6

Defendant's view." *State v. Foxen*, 2001-NMCA-061, ¶ 17, 130 N.M. 670, 29 P.3d 1071. Although this Court has held that "[e]vidence equally consistent with two hypotheses tends to prove neither," *State v. Garcia*, 2005-NMSC-017, ¶ 12, 138 N.M. 1, 116 P.3d 72 (internal quotation marks and citation omitted), a mere hypothesis of innocence presented at trial is not enough to prevail on a sufficiency of the evidence argument. *See State v. Brown*, 100 N.M. 726, 727-28, 676 P.2d 253, 254-55 (1984) (rejecting the proposition that a court reviewing a conviction based on circumstantial evidence must determine whether the evidence was "inconsistent with every reasonable hypothesis of innocence").

{11}    The evidence presented at trial supports Defendant's convictions of two counts of first-degree murder. The forensic evidence and testimony at trial established that the shots were fired from the backseat of the vehicle. The jury inferred deliberate intent to kill from the evidence showing that Defendant orchestrated the meeting with the victims, got into the backseat of Ashlock's car, and directed Ashlock to drive to a school parking lot at night. This evidence was further substantiated by Martinez's testimony that Defendant admitted that he set the victims up, got in the car with them, shot them, and regretted not killing the third victim.

{12}    Defendant contends that, because he was intoxicated at the time of the shootings, there was insufficient evidence for the jury to conclude that Defendant was

able to form the deliberate intent required for first-degree murder. Inability to form the specific intent required for first-degree murder due to intoxication from the use of drugs is a defense to that crime. *See State v. Boyett*, 2008-NMSC-030, ¶ 27, 144 N.M. 184, 185 P.3d 355. Successful assertion of "[t]he defense requires evidence of the condition of the mind of the accused at the time of the crime, together with the surrounding circumstances, . . . to prove that the situation was such that the defendant was unable to form specific intent, and thus lacked any deliberate or premeditated design." *Id.* (internal quotation marks and citation omitted).

{13} When "a defendant claims he was so intoxicated as to be unable to form the necessary intent, . . . the question of intent is a matter for the jury." *State v. Rayos*, 77 N.M. 204, 206, 420 P.2d 314, 315 (1967). Thus, although intoxication can be a defense to first-degree murder, a jury may properly determine that a defendant formed the requisite deliberate intent to commit first-degree murder despite evidence of intoxication. *See, e.g.*, *State v. Begay*, 1998-NMSC-029, ¶ 45, 125 N.M. 541, 964 P.2d 102 (holding that "[t]he jury could reasonably conclude . . . that [d]efendant formed a deliberate intent to kill in spite of the alcohol and/or methamphetamine he consumed earlier that evening"); *State v. Blea*, 101 N.M. 323, 325-26, 681 P.2d 1100, 1102-03 (1984) (holding "that the jury could reasonably infer deliberation and premeditation from the evidence presented to it at trial" despite the evidence that the

8

defendant consumed between ten and twenty tequila shots and fifteen to twenty beers prior to shooting and killing the victim outside a bar). In this case, despite evidence of Defendant's methamphetamine use on the day of the shootings, the jury concluded from the other evidence at trial that Defendant was capable of forming the deliberate intent to commit first-degree murder.

{14} Substantial evidence also supports Defendant's attempted murder conviction. Ashlock was shot and injured before he got out of the car. Defendant got out of the car holding the gun and pointed it at Ashlock. When the gun was later recovered, it was jammed with a bullet that would have prevented it from firing, which is consistent with Ashlock's testimony that Defendant cocked the gun and tried to shoot him again outside the vehicle. This evidence, in addition to Martinez's testimony about Defendant's admission that he regretted not killing the victim who got away, is sufficient to support Defendant's attempted murder conviction.

{15} The jury evaluated and rejected Defendant's conflicting evidence about what happened the night of March 10, 2006, and made reasonable inferences to conclude that Defendant committed first-degree murder and attempted first-degree murder. The evidence was sufficient to support those convictions.

**D.     The Evidence Was Sufficient to Support Defendant's Conviction of Conspiracy to Commit First-Degree Murder.**

{16} Defendant challenges his conspiracy conviction as being based on

9

unreasonable inferences made from circumstantial evidence. "Conspiracy consists of knowingly combining with another for the purpose of committing a felony within or without this state." NMSA 1978, § 30-28-2 (1979). "An overt act is not required; the crime is complete when the felonious agreement is reached. Such an agreement need not be proven by direct evidence; the agreement may be in the form of a mutually implied understanding and may be inferred from circumstantial evidence." *State v. Johnson*, 2004-NMSC-029, ¶ 49, 136 N.M. 348, 98 P.3d 998 (citation omitted). For the reasons that follow, we hold that a rational jury could have concluded that Smith and Defendant had an agreement or mutually implied understanding to commit murder.

{17} In the absence of a direct agreement, the behavior of alleged co-conspirators often provides the basis to infer a mutually implied understanding between them. In *State v. Nieto*, 2000-NMSC-031, ¶ 25, 129 N.M. 688, 12 P.3d 442, this Court upheld the defendant's conviction for conspiracy to commit first-degree murder despite the absence of any direct evidence that the defendant agreed to commit murder. According to the defendant's own testimony in *Nieto*, his involvement in the murder included the following: (1) presence in the car while his fellow gang members discussed a plan to rob the victims, (2) accompanying the two men to a cabin to carry out the plan, (3) carrying a loaded shotgun toward the cabin, and (4) holding a rival

10

gang member to the ground outside the cabin while the his fellow gang members shot and killed two people inside. *Id. ¶* 28. There was no evidence suggesting that the defendant was party to a discussion or agreement concerning killing the victims inside the cabin—in fact, the defendant argued that he objected to the plan to rob the victims. *Id. ¶* 7. Nonetheless, this Court held that the evidence of the defendant's behavior was sufficient to support the jury's finding that the co-conspirators had an agreement to kill, and we accordingly upheld the defendant's conspiracy conviction. *Id. ¶* 29.

{18} Likewise, in *State v. Roper*, 2001-NMCA-093, ¶ 8, 131 N.M. 189, 34 P.3d 133 (Ct. App. 2001), the Court of Appeals upheld the defendant's conviction of conspiracy to shoot from a vehicle, because there was sufficient evidence for the jury to conclude that the defendant and his co-conspirators had a "mutually implied understanding . . . proved by the cooperative actions of the participants involved." The defendant and two friends were drinking at a motel with the defendant's girlfriend and her sister when the defendant got in a fight with his girlfriend. *Id. ¶* 3. The defendant and his friends left the motel with two guns and drove to a fast-food restaurant, where one of the defendant's friends began "talking garbage" to the victims. *Id. ¶¶* 3-4. Both guns were then pointed out of the driver's window of the car in which the defendant was a passenger, and multiple shots were fired, hitting two

victims. *Id.* ¶ 5. Although the jury did not convict the defendant of shooting from a motor vehicle, the Court of Appeals upheld the defendant's conspiracy conviction because "[t]he natural inference was that [the d]efendant and his friends were going out looking for trouble pursuant to a mutually implied understanding that, if trouble were found, the guns would be used." *Id.* ¶¶ 8-9.

{19}     In this case, as in *Nieto* and *Roper*, the jury had to evaluate the behavior of Defendant and Smith to determine whether there was sufficient circumstantial evidence that they acted pursuant to either an express agreement or a mutually implied understanding. As in *Nieto* and *Roper*, Defendant and Smith were together before, during, and after the shooting, suggesting that they were acting in concert. Smith and Defendant enticed the three victims to meet them with the promise that they could obtain methamphetamine, got into the victims' car, and directed Ashlock to drive to an elementary school parking lot at night. There was no additional conversation in the car until after the shots had been fired, giving rise to an inference that there was a pre-existing plan. Defendant and Smith positioned themselves in the backseat of a confined vehicle behind two of the victims and next to the third victim, enabling the gunman to shoot all three victims in close succession. After the shots were fired, Defendant and Smith left the car together, and Smith stood next to Defendant as Defendant pointed the gun at Ashlock and attempted to shoot him

again. The method by which the victims were killed supports a reasonable inference by the jury that there was a conspiracy. *See State v. Reyes*, 2002-NMSC-024, ¶ 22, 132 N.M. 576, 52 P.3d 948 (explaining that because two of the victims were strangled to death, a manner of killing that takes several minutes of applied pressure, it was reasonable for the jury to infer that there was an agreement to kill).

{20} The events that occurred after the shootings provide further circumstantial evidence of a conspiracy. This Court has "recognized that evidence of flight is admissible to show consciousness of guilt." *State v. Gutierrez*, 2007-NMSC-033, ¶ 36, 142 N.M. 1, 162 P.3d 156; *see also State v. Jacobs*, 2000-NMSC-026, ¶ 15, 129 N.M. 448, 10 P.3d 127 (recognizing that evidence of flight from jail was admissible to show consciousness of guilt); *State v. Jackson*, 30 N.M. 309, 325, 233 P. 49, 56 (1924) (explaining that evidence of flight is admissible because it indicates consciousness of guilt). In this case, the evidence that Defendant and Smith ran from the scene together and fled to Albuquerque together supports an inference that both were conscious of their shared guilt.

{21} Our case law has recognized that evidence of concealment of a crime can support a conspiracy conviction. In *Reyes*, 2002-NMSC-024, ¶ 22, the State presented evidence that the defendants killed the victims in a hotel room, concealed the victims' personal belongings in the room, and hid two of the victims' bodies

under the beds. From that evidence, this Court concluded that the jury reasonably could have inferred that the defendants agreed to kill the victims and attempted to cover up the crimes. *Id.*

{22} In this case, Defendant and Smith disposed of evidence as they fled the scene of the shootings, collectively abandoning two baseball caps, a sweatshirt, a tee-shirt and a pair of jeans in an alley. From this evidence, it was permissible for the jury to infer that Defendant and Smith conspired to murder the victims and then attempted to cover up their crimes by removing clothing with blood spatter on it, and that Defendant and Smith knew witnesses had observed them running away and removed their clothes to avoid identification.

{23} We affirm Defendant's conviction for conspiracy to commit first-degree murder because the evidence presented at trial, including the method and circumstances of the killing and the subsequent joint disposable of evidence, flight, and concealment, provided a sufficient basis for a rational factfinder to conclude that Defendant and Smith agreed to commit first-degree murder, either expressly or through a mutually implied understanding.

**II.    WITNESS IMMUNITY**

{24} Finally, we address Defendant's argument that the trial court erred in denying his motion to grant immunity to Smith in order to secure Smith's testimony, thereby

14

depriving Defendant of a fair and impartial trial. This Court recently addressed the issue of witness immunity in *State v. Belanger*, 2009-NMSC-025, 146 N.M. 357, 210 P.3d 783. In *Belanger*, this Court held that New Mexico courts "do have the authority to grant a witness use immunity under certain limited circumstances." *Id.* ¶ 36. There are two reasons Defendant's immunity arguments must be rejected. The first is that, even if *Belanger* were applicable, Defendant failed to establish that Smith's testimony would have been helpful to his defense. *Id.* ¶ 38. More importantly, *Belanger* expressly stated that its holding was to be applied "prospectively and to all pending cases which have not yet gone to trial." *Id.* ¶ 60. *Belanger* was filed on May 12, 2009. Because Defendant's trial occurred in January 2008, we must apply the law on witness immunity that preceded *Belanger*.

{25}     At the time of Defendant's trial, New Mexico "embraced the view that use immunity [wa]s available only at the behest of the prosecution." *Id.* ¶ 1. This approach stemmed from New Mexico's rule on witness immunity which stated that the district court "may, *upon the written application of the prosecuting attorney*, issue a written order requiring a person to testify . . . notwithstanding his privilege against self-incrimination." Rule 5-116, NMRA (emphasis added). Evidence obtained under such an immunity order may not be used against the person compelled to testify except in a prosecution for perjury. Rule 11-412 NMRA.

15

**{26}** In accordance with Rule 5-116, pre-*Belanger* case law adhered to the principle that use immunity could be secured only through the written application of the prosecuting attorney, with the exception of cases of prosecutorial misconduct. *Belanger*, 2009-NMSC-025, ¶¶ 23-24. *See, e.g.*, *State v. Baca*, 1997-NMSC-045, ¶ 39, 124 N.M. 55, 946 P.2d 1066 (holding that "barring a clear showing of prosecutorial misconduct, use-immunity can only be sought by the prosecution"); *State v. Cheadle*, 101 N.M. 282, 287, 681 P.2d 708, 713 (1983) (holding "that in New Mexico there is no authority to demand immunity for a witness by the defense"); *State v. Sanchez*, 98 N.M. 428, 435, 649 P.2d 496, 503 (Ct. App. 1982) (finding that "[t]he trial court did not err in ruling that the power to seek witness immunity rests within the power granted solely to the prosecution"). In this case, because the prosecuting attorney did not request witness immunity for Smith, and Defendant did not allege prosecutorial misconduct, we conclude that the trial court did not err in denying Defendant's motion to grant witness immunity.

## III.   CONCLUSION

**{27}** The evidence supports Defendant's convictions of two counts of first-degree murder, one count of attempted first-degree murder, and one count of conspiracy to commit first-degree murder. The trial court did not err in denying Defendant's motion to grant witness immunity to Smith. Defendant's convictions are affirmed on

16

all counts.

{28}    **IT IS SO ORDERED.**

_____
**CHARLES W. DANIELS, Justice**

**WE CONCUR:**

_____
**EDWARD L. CHÁVEZ, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**RICHARD C. BOSSON, Justice**

17